# IN THE MATTER OF THE APPLICATION OF TOM PONG FOR A WRIT OF HABEAS CORPUS.

### APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED JUNE 12, 1906.                    DECIDED JULY 2, 1906.

### FREAR, C.J., HARTWELL AND WILDER, JJ.

REVISED LAWS—*force of new matter therein as law.*

The commission that prepared the Revised Laws was without authority to modify previous statutes so as to give them as so modified the force of law, but by Act 3 of the Laws of 1905 the legislature enacted the revision as a whole by reference and thereby gave the force of law to all of its provisions that could constitutionally be enacted by the legislature—even if the commission exceeded its authority in some instances in departing from the language of the original statutes or in inserting in constitutional form provisions that were previously unconstitutional.

ID.—*enactment of by reference—constitutional provisions as to title and three readings.*

The Revised Laws were constitutionally enacted as a whole by reference by a separate short act. It was unnecessary, in order to give the force of law to new matter therein, to incorporate its provisions in the enacting act, notwithstanding the requirements of the Organic Act of the Territory that each law shall embrace but one subject, which shall be expressed in its title, and shall pass three readings.

### OPINION OF THE COURT BY FREAR, C.J.

The petitioner was tried, convicted and sentenced to pay a fine of $50 and costs by the district magistrate of Honolulu on a complaint for violating section 1399 of the Revised Laws relating to the sale of opium, and on failing to pay the fine was committed to jail, but was discharged on habeas corpus by a circuit judge on the ground, as we understand, although there was no written opinion, that the offense was infamous and

therefore required an indictment by a grand jury. This appeal is taken from the order of discharge.

Since the offense is not infamous under the ruling in *Ex parte Higashi,* ante, page 428, which was decided after the order of discharge was made by the circuit judge in this case, the petitioner relies upon a different ground (which he relied upon also before the circuit judge but which apparently the latter did not pass upon), namely, that the statute is void. The argument is substantially as follows: Sections 1398-1401 of the Revised Laws, relating to licenses for the *sale* of poisonous drugs, were taken from corresponding sections (86-89) of Act 64 of the Laws of 1896, relating to licenses for the *importation and sale* of poisonous drugs; the original sections, although valid when passed by the republic as an independent sovereignty, were rendered invalid after annexation by the extension to these islands of the interstate and foreign commerce clauses of the federal constitution; and in their present form,. as set forth in the Revised Laws with the parts relating to importation eliminated, these sections, although they would be valid if properly enacted by the legislature, have never been so enacted (1) because the commission that prepared the Revised Laws was without authority to make material modifications in previously existing laws so as to render them as so modified operative without further legislative sanction, and (2) because the short act by which the legislature attempted to enact the Revised Laws as a whole by reference was in violation of Sections 45 and 46 of the Organic Act of the Territory, which require respectively "that each law shall embrace but one subject, which shall be expressed in its title," and "that a bill, in order to become a law shall, except as herein provided, pass three readings in each house * * * ,"—the contention being that the legislature did not intend to ratify anything that the commission may have done in excess of its authority and could not enact new legislation without embodying it in the act itself and reading it three times.

We will assume that the effect of the extension of the federal constitution to these islands was not merely to amend these sections of the original law by eliminating only such portions of them as related to importation, but that those portions were so essential that their invalidation carried with them the portions relating to sales in so far as the requirement of a license was concerned, and, further, that without the parts requiring a license for the importation or sale of poisonous drugs the part forbidding sales of opium, under the particular section now in question, except upon the written prescription of a licensed physician, irrespective of the requirement of a license, could not stand; in other words, that the four sections as they stood in the original act were rendered void in toto, and that the commission exceeded its powers in inserting these sections as modified in the Revised Laws. We may assume also, and as to this there can be no doubt, that the legislature did not attempt, and did not have the power, to authorize the commission to modify materially former laws, whether valid or void, so as to make them effective as law in their modified forms. It was not true, indeed, that the legislature authorized the commission to prepare a mere compilation of former laws in their original forms. The long period that had elapsed since the last previous revisions of the laws, the many inconsistencies that had grown up during that period, the many changes that had taken place in the form of our government, and the extension of the federal constitution and laws to these islands, required numerous alterations to be made in the laws in order to make the compilation consistent and effective and enable the legislature to act wisely in case it chose to enact the revision. The act itself (Act 45, Laws of 1903), which provided for the appointment of the commission, also shows in its recitals and in its body that the necessity of considerable alteration was recognized. Various classes of changes were expressly authorized and the compilation was to be presented to the legislature at its next session for such action as it should choose to take. The commission, while recognizing its authority to depart from original forms, recog-

nized also the limitations of that authority and as a rule when in doubt aimed to err, if at all, on the side of conservatism by departing as little as possible from the language of previous laws. This is shown by the work itself and by the report that accompanied its presentation to the legislature. The nature of the changes was described in the report and the particular changes were set forth in notes in the work itself. An act of the legislature was essential in order to give the text with its modifications of former statutes the force of law. It was for the legislature to say whether it should put the entire revision in the form of a statute with its own title and pass it through three readings, as was done with the Penal Code of 1850, which was a new code not based on previous statutes, and the Civil Code of 1859, which was a revised compilation of previous statutes with many important modifications made by the commissioners in their discretion for other purposes than to make the laws consistent and effective; or to enact the revision as a whole by a separate short act, as it attempted to do by Act 3 of the Laws of 1905 entitled "An act to enact the Revised Laws of Hawaii," and as it did in the case of the Penal Code of 1869, which was a compilation of previous laws with very little modification, and as it did when it enacted the entire common law of England with certain exceptions by a section in an act of 1892 which is now section 1 of the Revised Laws; or to provide merely that the various portions of the Revised Laws might be referred to in indictments and judicial proceedings without reference to the corresponding portions of the original laws in the original enactments, as it did in the case of the Penal Laws of 1897, which was a mere compilation of previous laws without material change; or to let the revision stand entirely on its own merits as a work of convenience without recognizing it by statute at all, as it did in the cases of the Compiled Laws of 1884 and the Civil Laws of 1897, which were mere compilations without material modifications. With full knowledge of what the commission had done, the legislature adopted the course of attempting to enact the Revised Laws as a whole by a separate short act, and the question is whether that attempt was effectual.

The act to enact the Revised Laws embraces but one subject and that is expressed in its title. It also passed three readings in each house. It therefore complies with the provisions of the Organic Act in question unless it is necessary to incorporate in an act in full, and not merely by reference, all that is to be made law by the act. The petitioner concedes that the act would be sufficient if, or in so far as, the Revised Laws contained only former laws without material change but contends that a body of law cannot thus be enacted by a separate act if, or in so far as, it contains new provisions. It is difficult to see why a legislature should attempt to enact a revision if such enactment would be operative only as to such parts as set forth former laws without change, and it is equally difficult to see why a legislature could not enact an entire revision or code that contained some material modifications of previous laws if it could enact a compilation that did not contain any new provisions. We, however, will not pursue the argument further except by referring to a few cases and quoting passages from the opinion of the court in one of the leading cases upon the subject. The case is that of *Central of Georgia R. Co. v. State,* 104 Ga. 831 (42 L. R. A. 518). The same contentions were made as in this case; the commission had materially modified one of the former laws and the legislature had attempted to enact the entire code by a separate short act; and similar constitutional provisions were invoked to show that the legislature could not enact the code in that manner.

The court said, among other things, as to the powers of the commission and the intention of the legislature:

"It is insisted that by the act approved December 19, 1893, providing for the appointment of three commissioners to codify the laws of Georgia, these commissioners were simply empowered to codify and arrange in systematic and condensed form the laws then in force in the state, and had no authority whatever to embody in the Code any new law, or any provision which modified any existing law of the state. No one would hardly pretend that any new matter in the Code derives force or efficacy by virtue of the act of the commissioners alone. Even if the legislature had attempted to confer upon the commissioners

the power to make changes in the law, and to embody in the Code such new matter as they saw proper, such an act of the legislature, in so far as its purpose was to thus create new legislation for the state, would have been an absolute nullity. Enacting and changing laws for a state devolved by the Constitution upon the legislative branch of its government, and that branch cannot delegate the power to another. A consideration, therefore, of the duties and powers imposed upon the Code commissioners, can throw no light upon what construction should be given an act of the legislature adopting their work. If the codifiers introduced any new matter in the Code, it, of course, amounted to nothing unless it afterwards was enacted into statute by legislative sanction. Where such matter is not inherently unconstitutional,—that is, where it embraces nothing that is not a proper subject-matter of legislative enactment,—there can be no question but that the legislature has the power to enact it into law or not, as it seems proper. When the work of the commissioners was completed, it was laid before the legislature. It had the power to reject that work or to accept it, and in its acceptance it had the power simply to provide for the pay of the commissioners, and the publication of their work for the use of the public; and, if nothing more was done, there would have been a want of legislative sanction to any new matter embodied in the Code, and hence such new matter would never have had any validity. The vital question, then, in this case, is not what the commissioners had the power to do, but what the legislature intended to do with their work. That intention can only be gathered from what the legislature itself has deliberately declared when it finally passed upon the work reported to it by the commissioners. This final action of the legislature is embodied in what is known as the 'Adopting Act' of the Code, approved December 16, 1895. Section 1 of that act declares: 'That the code of laws prepared under its authority by John L. Hopkins, Clifford Anderson and Joseph R. Lamar, and revised, fully examined, and identified by the certificate of its joint committee, and recommended and reported for adoption, and with the acts passed by the general assembly of 1895 added thereto by the codifiers, be, and the same is, hereby adopted and made of force as the Code of Georgia.' This portion of the body of the act is covered by these words in the title, 'An Act to Approve, Adopt, and Make of Force the Code of Laws Prepared under the Direction and by Authority of the General Assembly,' etc. A legislative body should always be

presumed to mean something by the passage of an act. If, as contended by plaintiff in error, the legislature by this act intended to adopt such provisions in this Code as were law any way, without any further legislative sanction whatever, then the act in question is absolutely meaningless. It would give no more force or effect to the Code of 1895 than such a work would have carried with it emanating from a private source, and without any legislative warrant or authority whatever. The code of laws designated and identified in the act was adopted and made of force as the Code of Georgia. Not a part of the Code was then made of force, but the entire Code, as compiled by the commissioners. It would be difficult to conceive how language could more clearly or forcibly express the real intent of the legislature in this matter than the words used in the title and the body of this act. If it means anything, it means a purpose of the legislature to adopt and make of force a code of laws, and hence to breathe into every provision in that code the validity of a legislative enactment. Any other construction would ascribe to the legislature the folly of declaring, in effect, 'We adopt as law in this code everything which would be law any way without further sanction.' * * *"

And as to the requirement of three readings:

"One attack made upon the adopting act is that it does not contain in its body any of the various provisions of the law which it seeks to declare of force, and that under the constitutional provision above cited it was necessary that these provisions should have been embodied in the act, and should have been read three times before their passage. If this contention be correct, then a large body of our laws, many of which have been enforced for a century, are unconstitutional and void. The act of 1872 revived the colonial statutes by mere reference, and without embodying them in the act itself. The act of 1874 adopted the common law of England. These laws were passed under a constitution which required bills to be read three times in the house and twice in the council; and the common law not only was not so read, but very few, if any, of the legislators knew all of its provisions. * * *"

And as to the provision in regard to the title:

"This presents the only question in the case which, to our minds, is at all difficult of solution. An act adopting a code necessarily, in one sense, refers to a great many subjects, and enacts into statute provisions not germane one to another. We

have, however, after much reflection, thought, and research, reached the conclusion that the position of the able counsel of plaintiff in error is founded upon a misconception of the real meaning and the purpose of the provision in the Constitution above quoted. * * * A bill may contain more than one subject, and yet, if its title clearly indicates all its subjects it will not be apt to mislead the legislature as to its intent and scope and cannot, therefore, be considered surreptitious legislation. Experience, however, taught that it was often the case that many matters were embraced in the same bill adverse in their nature, and having no necessary connection, with the view of combining in their favor the advocates of all, and thus secure the passage of several measures, no one of which could succeed upon its own merits. It was to prevent this dangerous practice that our organic law declares that a bill should contain but one subject-matter. An act, however, adopting a code, or a system of laws, obviously does not fall within any of the classes of mischiefs which this restriction in the constitution was intended to remedy. No one need be misled by a title to an act which declares that its purpose is to adopt a certain code or system of laws nor is there anything in such an act to occasion any alarm that it would pass contrary to the wishes of the people by virtue of improper combinations among members of the legislature. What the Constitution looks to is unity of purpose. It does not mean by one subject-matter only such subjects as are so simple that they cannot be subdivided into topics; but it matters not how many subdivisions there may thus exist in a statute, or how many different topics it may embrace, yet if they all can be included under one general, comprehensive subject, which can be clearly indicated by a comprehensive title, such matter can be constitutionally embodied in a single act of the legislature. On the other hand, should the legislature embody in one act two or more different subjects, however simple they may be, which have no relation or connection whatever one with the other, the Constitution is violated. * * * "

See also *Mathis v. State,* 31 Fla. 291 (12 So. 681); *Dew v. Cunningham,* 28 Ala. 466 (65 Am. Dec. 362); *Bales v. State,* 63 Ala. 30. These cases are cited as particularly in point in view of the circumstances and arguments in the present case. See also *Republic v. Parsons,* 10 Haw. 601.

The only case relied on contra is that of *Lewis v. Dunne,* 134 Cal. 291, which, however, is easily distinguishable from

this case. The decision in that case was based on the two grounds, (1) that the act was an act, not to enact the code as a whole, but to revise it by changing numerous sections in it without reenacting and publishing at length as revised the whole code as required by a special provision of the constitution, which is not found in the Organic Act of this Territory, and (2) that it did not comply with the provision that each act should have but one subject which should be expressed in its title, which is found in our Organic Act. That was an act covering 150 pages, amending over 400 sections, repealing nearly 100 sections, changing the numbers of other sections and adding a great many new sections. It dealt with a vast variety of subjects, many of which were totally distinct from each other and had no relation to civil procedure, and purported to be a revision of the code of civil procedure, which was the title given for convenience to merely one of four volumes of codes, and that particular volume was not confined to any particular subject or subjects but included substantive law, criminal law and legislation that might be classed under any other category than that of civil procedure. One member of the court dissented on the second ground and the majority of the court based its decision on that ground in part upon an express provision of the constitution declaring all its provisions mandatory and declined to express an opinion upon the question whether even under the special provisions of that constitution the legislature could not enact by reference an entire code of civil procedure. If that case were in point it would be contrary to a practical unanimity of opinion expressed by other courts, but, as already stated, it is not in point. In the lengthy note to that case in 55 L. R. A. 833, the conclusion is reached that,

"A code of laws or of procedure need not be embodied in an act adopting it, but a reference therein to the code adopted is sufficient. A constitutional requirement as to the reading of a bill in each house is sufficiently complied with in the case of a code if the act adopting it is duly read without reading the code itself. A provision exists in the constitution of nearly all the states that every act shall have but one subject (or object,

in a few cases), which shall be expressed (or embraced) in its title. \* \* \* The authorities seem to be uniformly to the effect that such provision does not prevent the original enactment of a code. \* \* \* It would seem that the original enactment of a code or general statutes under the title 'An Act to Adopt a Code of Laws,' or some similar title, could not come within this evil; and the courts have uniformly held such a title sufficient where the question has been directly involved."

No sufficient cause being shown for the discharge of the petitioner, the order appealed from discharging him is reversed and he is remanded to the custody of the sheriff.

*G. D. Gear* for petitioner.

*E. A. Douthitt, County Attorney,* for respondent.