**SUNBEAM CORPORATION, a corporation, Plaintiff,**

v.

**GEM JEWELRY COMPANY, Inc., a corporation, Gem Housewares Co., Inc., a corporation, Government Employees Mutual of Honolulu, Inc., a corporation, Defendants.**

Civ. No. 1589.

United States District Court
D. Hawaii.

Nov. 19, 1957.

Landels, Weigel & Ripley and Stanley A. Weigel, San Francisco, Cal., Pratt, Tavares & Cassidy, Honolulu, Hawaii,

Roy A. Vitousek, Jr., Honolulu, Hawaii, of counsel, for plaintiff.

Heen, Kai, Dodge & Lum, Honolulu, Hawaii, R. G. Dodge, Honolulu, Hawaii, of counsel, for defendants.

Before McLAUGHLIN, Chief Judge.

### Ruling Upon Motion to Dismiss

I have before me a motion to dismiss a complaint setting forth two alleged causes of action under the Hawaiian Fair Trade Act (Revised Laws of Hawaii 1955, Chapter 205), one for injunction and one for damages. Plaintiff has alleged diversity of citizenship and the $3,000 jurisdictional amount. Under the Hawaiian Fair Trade law Sunbeam products manufactured by the plaintiff corporation are fair-traded in this District. Despite that law, defendants who have not signed a fair trade agreement with Sunbeam but who have been given notice of such agreements after they have acquired Sunbeam products are selling these products at prices below those fixed under the fair trade contracts by the manufacturer. Plaintiff alleges that it has suffered damage and will continue to suffer damage unless these non-signer defendants are enjoined. It seeks not only a temporary injunction to enjoin violations of its fair trade contract rights under the statute, but also to recover exemplary and punitive damages for defendants' alleged wilful violations.

To support their contention that not only should no temporary injunctive relief be granted but that no permanent injunction should issue or recovery in damages be ordered, defendants have claimed that the complaint is defective in many particulars. The extensive motion to dismiss ranges from charges that the Court is without jurisdiction to various assertions that no equitable relief should be granted for reasons either of defect in the Fair Trade contract, or because of lack of mutuality of remedy or the lack of availability of specific performance due to the clause countenancing revocation. The motion contains two strong contentions that regardless of the alleged defects heretofore mentioned, no relief can be granted and that the complaint should be dismissed because the Hawaiian Fair Trade Act is inconsistent with Federal law, or if valid as to signers, is certainly invalid as to non-signers such as these defendants.

Challenging the jurisdictional allegations of defendants' motion to dismiss, plaintiff has produced testimony and affidavits of corporate officers and deems itself to have satisfied the Court that there is jurisdiction at least for preliminary purposes.

No dispute exists as to the parties' diversity of citizenship or of the Court's well settled power to entertain a diversity suit. There is issue as to whether or not the jurisdictional $3,000 amount is here made to appear with sufficient clarity to warrant the Court going forward. In these fair trade cases there is much talk to the effect that the matter in controversy is the good will of the plaintiff or the value of the plaintiff's trade mark distinguished from any prospective damage which might result from the defendant's actions. Indeed, the bulk of the cases use that type of language, and if it happens to be a plaintiff corporation that is nationally well-known simply say that obviously the good will of the corporation is in excess of $3,000 and go merrily on from that point. There are apparently no cases involving unpopular corporations or corporations that have unpopular products and hence no good will of the value of $3,000. Nor are there cases where the intangible good will is seriously questioned as to whether or not it has any value at all. Here the Court can judicially notice, for it does seem to be a matter of common knowledge, that the Sunbeam Corporation has attached to its name and its products much good will, indeed of a value far in excess of $3,000. If that be the test, certainly jurisdiction here exists. If, however, the Seventh Circuit's test be applied (Seagram-Distillers Corp. v. New Cut Rate Liquors, 7 Cir., 1957, 245 F.2d 453, certiorari denied 78 S.Ct. 61) proof of jurisdiction

here must be said to be lacking. It does not appear from the evidence when this test is applied that the potential damage in the offing, if defendants' acts are allowed to continue, would volume wise amount to $3,000. I am dubious as to whether or not plaintiff has here upon the challenging of the defendants satisfied the requirements of making out a preliminary, satisfactory showing of jurisdiction when tested by the law of KVOS, Inc. v. Associated Press, 1936, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183.

■ Assuming that jurisdiction does exist, I nevertheless do not believe that there is any merit to the contentions advanced by the defendants that this case should be dismissed for reasons sounding in the equity area of lack of mutuality because the contract could not be specifically enforced. These contentions are lacking in merit for the reason that this is not a suit on a contract but is a tort action against a non-signer founded on a statute. Granting that this fair trade contract is very one-sided and lacking in several of the requirements of equity, still I agree with plaintiff that what it is trying to enforce is a set of statutory rights. Therefore, the language of privity, mutuality, or specific performance is not pertinent.

■ This brings me to the consideration of what I deem to be the central contention upon the motion, to wit, whether or not the Hawaiian Fair Trade Act is valid either as to signers or non-signers. We are met at the threshhold of the problem with the question of whether or not I am foreclosed from deciding it because some years ago the Supreme Court of the Territory of Hawaii in Auto Rental Co. v. Lee, 1939, 35 Haw. 77, held unanimously that the Hawaiian Fair Trade Act was not inconsistent with any Federal law and hence valid. I do not believe that the Auto Rental Co. case forecloses this Court from examining for itself the Federal question. The opinions of the Territorial Supreme Court like those of State supreme courts are binding on us in matters of local law. Whether or not the Hawaiian Fair Trade Act is in conflict with Federal law obviously is not a local question. Thus it is that this Court is not barred from deciding this issue.

To be sure the language of the Auto Rental Co. case went beyond the requirement of the case. The issues of Auto Rental did not involve non-signers but were between parties who had signed a fair trade contract. It is also significant to remember that the opinion of the court was announced subsequent to the Miller-Tydings Act but before the McGuire Act. It should be pointed out, though, that from time to time successive legislatures of the Territory have passed and re-passed an Hawaiian Fair Trade Act so that to this day the Hawaiian Fair Trade Law is in step with the most recent action of the Congress of the United States and the Supreme Court.

The question to be determined is whether or not by reason of the McGuire Act amending Section 45 of Title 15 United States Code Annotated, it can be said that Section 3 of the Sherman Act (15 U.S.C.A. § 3) has or has not been amended. If upon analysis and interpretation it can be said that the McGuire Act had the effect of amending Section 3 of the Sherman Act, then certainly the Hawaiian Fair Trade Act is valid at least as to signers. If the McGuire Act had no effect on Section 3, then the Hawaiian Fair Trade Act has never been valid. Reaching that conclusion there would be no need to distinguish between signers and non-signers.

I have examined the legislative history of this Fair Trade legislation, and I am, of course, conversant with the Federal policy first expressed by Congress in 1890 in passing the Sherman Act. I well know that it has been the Federal policy since 1890 to regard every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade, or commerce among the several states, or with foreign nations, to be illegal. This policy also regards as illegal every contract, combina-

tion or form of trust, conspiracy in restraint of trade or commerce in any territory of the United States or the District of Columbia. This would include restraint of trade or commerce between any such territory and another, between any territory and territories and any state or states and the District of Columbia, or with foreign nations, or between the District of Columbia and any state or states or foreign nations. Indeed, this language of Section 1 and Section 3 of the Sherman Act might well be said to be one of the cornerstones of our competitive free economy.

I know also from this legislative history that there came a time in 1937 when lobbyists and economic soothsayers sold the Congress what is regarded by many today as a bill of goods to the effect that a decent respect for states' rights and the economy of the states required that certain state legislation be rendered immune from the effect of the Sherman Act despite its adverse bearing on interstate and foreign commerce. And thus it was that we had the original exception to the Sherman Act carved out by the Miller-Tydings Act. This exception is a grant of immunity from Federal action and is solidly premised on a recognition of and respect for states' rights.

The original statute, 50 Stat. 693, passed August 17, 1937, says the Miller-Tydings Act amends Section 1 of Title 15. Error, however, crept into the unofficial text. Thus we find the United States Code and the United States Code Annotated stating to this day that the Miller-Tydings Act amended not only Section 1 but Sections 1 through 7 inclusive. It did not. But the question we have is, did the McGuire Act amend Section 3? As stated, the Miller-Tydings Act did not because the actual statute controls over the unofficial text whenever there is a variance. There is no such problem of error with regard to the McGuire Act. It is perfectly clear in the original statute, the United States Code, and in the unofficial text. On its face it appears to endeavor by indirec-

tion to amend Section 3. It uses the same language as the Miller-Tydings Act, plus, for the Supreme Court's benefit, the emphatic insertion: " * * * or in any of the Antitrust Acts." See Schwegmann Bros. v. Calvert Distillers Corp., 1951, 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035.

The McGuire Act reads:

"Nothing contained in this section or in any of the Antitrust Acts shall render unlawful any contracts or agreements prescribing minimum or stipulated prices, or requiring a vendee to enter into contracts or agreements * * * when contracts or agreements of that description are lawful as applied to intrastate transactions under any statute, law, or public policy now or hereafter in effect in any State, Territory, or the District of Columbia in which such resale is to be made, or to which the commodity is to be transported for such resale." (Emphasis supplied.)

Our inquiry is, does the phrase "or in any of the Antitrust Acts" of the McGuire Act amend Section 3?

██ I do not believe that it does. The McGuire Act, too, is premised on a recognition of states' rights; witness the preamble to the Act. Further, repeals by implication are not favored, especially when the implication is a strained and dubious one, and one which would have the result of jarring anew the Sherman Act, especially its application in areas that are peculiarly the sole and exclusive property of the Federal Government, namely, the District of Columbia and incorporated territories.

There are two further reasons why I do not believe that the McGuire Act amended Section 3. I have in mind what might be called "congressional know-how." Judge Felix pointed out in Johnson & Johnson v. Gem Sundries Co., Inc., Case No. 3204, decided Oct. 18, 1957, First Circuit of Hawaii, that when Congress has in mind amending the Sherman Act it does so directly, expeditiously and with clarity. Observe

the fact that when in 1955 it sought to increase the penal provision from $5,000 to $50,000 it did so by not only amending Section 1 but by also expressly amending Section 3 (15 U.S.C.A. §§ 1 and 3; 69 Stat. 282).

The final reason why I believe that the McGuire Act does not amend Section 3 by indirection or implication is that as it is written the McGuire Act does not make sense as applied to Territorial commerce. Throughout the Sherman and Clayton Acts there is a well-defined, respected understanding of the meaning of the words "interstate," "intrastate" and "Territorial commerce." Section 45–A as amended by the McGuire Act talks about *intrastate* transactions in a territory or the District of Columbia. You simply do not have intrastate transactions in a territory or in the District of Columbia. You can only have those inside of a state. It looks to me as if, without thinking, the draftsman included the phrase "State, Territory or the District of Columbia" as a stock phrase customarily used to assure application throughout the entire country. Perhaps inadvertently the draftsman did not notice this defect to which I have called attention, deemed it harmless or by some process of reasoning hoped that once Congress passed the bill some court would liberally interpret "intrastate" to include territorial commerce and the District of Columbia. Such would be without warrant under the Sherman Act, which so carefully distinguishes interstate and foreign commerce, commerce in the territories and the District of Columbia, and intrastate commerce.

It is well-settled by the opinion of the Second Circuit in General Electric Co. v. Masters Mail Order Co., 1957, 244 F.2d 681, certiorari denied 78 S.Ct. 32, that fair trade laws are not lawful in the District of Columbia. Thus it would seem that the argument that the McGuire Act is an expression of Federal "policy" for Federal areas falls by the wayside. Congress has never thought so much of fair trade laws as to enact a Federal fair trade law applicable to territories or the District of Columbia or to interstate commerce. Indeed, the whole structure of these exceptions to the Sherman Act are poised and balanced on the theory of respect for states' rights. Such exceptions could not apply to a territory which has no sovereignty. I am satisfied that the complaint is one which does not state a claim or claims upon which relief can be granted. The Hawaiian Fair Trade Act is in violation of Section 55 of the Hawaiian Organic Act (48 U.S.C.A. § 562) in that it is and always has been inconsistent with Section 3 of the Sherman Act and hence invalid.

The motion to dismiss is granted.