**G.E.M. SUNDRIES COMPANY, Inc.,**
Appellant,

v.

**JOHNSON & JOHNSON, INC., Appellee.**

No. 16396.

United States Court of Appeals
Ninth Circuit.

Aug. 12, 1960.

⊙━9

See also 269 F.2d 908.

R. G. Dodge, Honolulu, Hawaii, Marvin G. Burns, Beverly Hills, Cal., for appellant, Heen, Kai & Dodge, Honolulu, Hawaii, of counsel.

Frank D. Padgett, Honolulu, Hawaii, for appellee, Robertson, Castle & Anthony, Honolulu, Hawaii, of counsel.

Before POPE, MERRILL and KOELSCH, Circuit Judges.

MERRILL, *Circuit Judge.*

This appeal is taken from the Supreme Court of the Territory (now State) of Hawaii, pursuant to 28 U.S.C. § 1293. It concerns the validity of the Hawaii Fair Trade Act (§§ 205–21, 205–25, Revised Laws of Hawaii, 1955), which legalizes contracts by which manufacturers of trademarked goods bind retailers, both contracting and non-contracting, to maintain resale prices fixed by the manufacturer in the accepted contracts. Appellant contends, contrary to the judgment of the Hawaii Supreme Court, that this Act is invalid under § 3 of the Sherman Act, 15 U.S.C. § 3, and, in its application to non-contracting retailers, that the Act violates the due process of law clauses of the Fifth and Fourteenth Amendments of the United States Constitution.

Hawaii's Fair Trade Act was passed on May 14, 1937. It authorizes minimum price fixing contracts as to the sale or resale of products sold under trademark brand or name, and further provides (§ 205–25):

"Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of this part, whether the person so ad-

vertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby."

This action was brought by Johnson & Johnson to enjoin G.E.M. from the retail sale of Johnson & Johnson products at less than the prices fixed by Johnson & Johnson in contracts entered into with other retailers. It is established that on March 9, 1954, Johnson & Johnson entered into a contract with Stewart's Pharmacies, Ltd., a Honolulu retailer, by which the retailer agreed not to sell Johnson & Johnson products at less than specified minimum prices. Stewart's Pharmacies purchased its products directly from Johnson & Johnson. On February 20, 1956, Johnson & Johnson entered into a similar contract with one Edward Kimura, a Honolulu retailer, who purchased the products involved from a Johnson & Johnson wholesale distributor in Honolulu. G.E.M. was not a party to any price fixing agreement, nor was any Johnson & Johnson wholesale distributor in Hawaii a party to such an agreement. While G.E.M. had notice of the price fixing contracts between Johnson & Johnson and other retailers, it had never entered into such an agreement itself; nor had the Honolulu wholesaler from which it had bought. G.E.M. sold Johnson & Johnson products at less than the minimum price fixed.

The action was dismissed by the Circuit Court of Honolulu. Johnson & Johnson appealed to the Supreme Court of Hawaii, which reversed and entered judgment for Johnson & Johnson. G.E.M. then took this appeal to this Court.

At the time the Hawaii Fair Trade Act was passed in 1937, § 3 of the Sherman Act provided:

"Every contract, combination in form of trust or otherwise, or conspiracy, in restraint of trade or commerce in any Territory of the United States or of the District of Columbia, or, in restraint of trade or commerce between any such Territory and another, or between any such Territory or Territories and any State or States or the District of Columbia and any State or States or foreign nations, is declared illegal. Every person who shall make any such contract or engage in any such combination or conspiracy, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding $5,000, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court."

By this section the prohibitions imposed upon interstate commerce by § 1 of the Sherman Act were made applicable to territories and to the District of Columbia.

It is conceded that the Hawaii Act, at the time of its passage, was invalid as providing for contracts in restraint of trade contrary to § 3 of the Sherman Act.

Section 1 of the Sherman Act was amended August 17, 1937, by the Miller-Tydings Act, 50 Stat. 693. This amendment exempted from the prohibition of the section contracts prescribing minimum prices for the resale of specified commodities "when contracts or agreements of that description are lawful as applying to intrastate transactions" under local law.

In 1950, the Supreme Court in Schwegmann Bros. v. Calvert Distillers Corporation, 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035, construed the Miller-Tydings amendment as applying only to price fixing by contract and as not permitting the enforcement of price fixing against those not parties to a contract.

In 1952, by the McGuire Act, 66 Stat. 632, 15 U.S.C. § 45, the Federal Trade Commission Act was amended to deal with the problem of nonsigners. Subsection a(2) authorizes price fixing contracts in substantially the form authorized by the Miller-Tydings Act. Subsection a(3) provides:

"Nothing contained in this section or in any of the Antitrust Acts shall render unlawful the exercise of the

enforcement of any right or right of action created by any statute, law, or public policy now or hereafter in effect in any State, *Territory, or the District of Columbia,* which in substance provides that willfully and knowingly advertising, offering for sale, or selling any commodity at less than the price or prices prescribed in such contracts or agreements whether the person so advertising, offering for sale, or selling is or is not a party to such a contract or agreement, is unfair competition and is actionable at the suit of any person damaged thereby." (Emphasis supplied.)

Upon its face, the McGuire Act would thus appear to validate the Hawaii Fair Trade Act in its application to non-signers.

Upon two grounds, however, G.E.M. contends that the McGuire Act cannot apply to this case.

First, it asserts that the McGuire Act should be construed to apply only to fair trade laws enacted by states and not to those enacted by territories. It points to the statement of purpose set forth in § 1 of the Act, 66 Stat. 632:

"  *   *   *   to protect the rights of States under the United States Constitution to regulate their internal affairs and more particularly to enact statutes and laws  *   *   *  which authorize contracts and agreements prescribing minimum or stipulated prices for the resale of commodities  *   *   *."

It points out that, while such rights exist in the states, and Congress under its power to regulate commerce may make such contracts lawful as applied to interstate commerce, § 3 of the Sherman Act expressly rejects such rights in the territories and retains under federal (as opposed to local) law control over such contracts within the territories. It reasons that, because the Miller-Tydings amendment related only to § 1 of the Sherman Act, its reference to its applicability to territories must (in context with unamended § 3) be recognized to be mistaken and be disregarded.

But we are not here concerned with the Miller-Tydings amendment. Regardless of the logical force of this argument, it ignores the express language of the McGuire Act:

"Nothing contained in  *   *   *  *any of the Antitrust Acts* shall render unlawful the exercise  *   *   *  of any right  *   *   *  created by any statute  *   *   *  in effect in any  *   *   *   *Territory*  *   *   *." (Emphasis supplied.)

The right enjoyed by the states to regulate their internal affairs in this area has thus been expressly extended to the territories. There is nothing "absurd or futile"[1] in such a construction and we cannot read territories out of the Act when Congress has expressly included them. Section 3 of the Sherman Act must be recognized to have been amended by the McGuire Act.

Second, G.E.M. asserts that the McGuire Act cannot apply to the Hawaii Fair Trade Act, since its effect is limited (Subsection a(2)) to contracts which are "lawful as applied to intrastate transactions under any statute, law, or public policy now or hereafter in effect" in the territory. It contends that, since the Hawaii Act was invalid at the time of its enactment, there was no valid statute upon which the McGuire Act could operate.[2]

The answer is that the Hawaii Act was re-enacted March 18, 1957, by "an Act to Enact the Revised Laws of Hawaii 1955." Section 1 of that Act provides that all sections of the manuscript

1. See United States v. American Trucking Association, 1940, 310 U.S. 534, 543, 60 S.Ct. 1059, 1064, 84 L.Ed. 1345.

2. We note that Hawaii's statehood, Act of March 18, 1959, 73 Stat. 4, does not render either of these contentions moot. If either were valid, Hawaii's fair trade law would not have been in effect at the time of statehood and thus made operative by § 15 of that Act.

designated as "Revised Laws of Hawaii 1955" "are hereby enacted as law."

◼ G.E.M. contends that this was not a re-enactment and points to § 6 of the revision Act, which states:

"Provisions in the Revised Laws of Hawaii 1955 shall be construed as continuations or amendments of applicable or corresponding provisions of previously existing laws and not as new enactments."

This section relates to construction and deals with the circumstances under which reference may be had to previously existing law in order to resolve ambiguities or conflicts. It should not itself be construed to affect the validity of the revision as an effective enactment of the law it embodies. Hawaii has held that the enactment of a revision of the laws is new legislation and renders unimportant any question as to the validity of a statute prior to revision. Springer v. Thompson, 1920, 25 Haw. 638, 640–641; In re Tom Pong, 1906, 17 Haw. 566; see generally State v. Pitet, 1952, 69 Wyo. 478, 243 P. 2d 177, 184–188, and authorities there collected.

◼ We conclude that the Hawaii Fair Trade Act, as re-enacted was authorized by the McGuire Act. A price fixing contract entered into pursuant to its terms does not constitute a contract in restraint of trade under the Sherman Act.

◼ G.E.M. next contends that application of the Hawaii Fair Trade Act under the permission of the McGuire Act is unconstitutional in regard to sellers who are not parties to price fixing contracts, as a violation of the due process clauses of the Fifth and Fourteenth Amendments to the Constitution. It contends that the effect of the Act in this respect is to deny to the owner (the retailer) of property the right to determine for himself the price at which he will sell—a right which is an inherent attribute of the property itself—and that there is an improper delegation of power to private persons. It points to the following language in Schwegmann Bros. v. Calvert Distillers Corporation, supra, 341 U.S., at page 389, 71 S.Ct. at page 747, with reference to enforcement of a price fixing contract against nonsigners:

"That is not price fixing by contract or agreement; that is price fixing by compulsion. That is not following the path of consensual agreement; that is resort to coercion."

Schwegmann, however, was not examining the constitutionality of legislation. It was examining the scope of legislation. It held that legislation which authorized price fixing by contract or agreement only did not authorize price fixing without consent.

Old Dearborn Distributing Co. v. Seagram-Distillers Corporation, 1936, 299 U. S. 183, 57 S.Ct. 139, 81 L.Ed. 109, in our view is controlling upon this question. There the Supreme Court (prior to the Miller-Tydings Act and the McGuire Act) examined the constitutionality of the Illinois Fair Trade Act in its application to nonsigners. Whether appellant in that case was contractually bound was a factual issue. The court held this dispute immaterial, stating in 299 U.S. at page 187, 57 S.Ct. at page 142:

"The contract was assailed by appellant below as ineffective, and for present purposes we accept that view. It is plain enough, however, that appellant had knowledge of the original contractual restrictions and that they constituted conditions upon which sales thereafter were to be made."

Later, 299 U.S., at pages 193–194, 57 S. Ct. at page 144, it was stated:

"Appellants here acquired the commodity in question with full knowledge of the then existing restriction in respect of price which the producer and wholesale dealer had imposed, and, of course, with presumptive if not actual knowledge of the law which authorized the restriction. Appellants were not obliged to buy; and their voluntary acquisition of the property with such knowledge carried with it, upon every principle of fair dealing, assent to the protec-

tive restriction, with consequent liability under section 2 of the law by which such acquisition was conditioned."

and later, 299 U.S. at page 194, 57 S.Ct. at page 145:

"Here, the restriction, already [at the time of appellant's acquisition of the property] imposed with the knowledge of appellants, ran with the acquisition and conditioned it."

With reference to the interest of the manufacturer, the court stated at page 193 of 299 U.S., at page 144 of 57 S.Ct.:

" * * * section 2 [of the Illinois Act] does not deal with the restriction upon the sale of the commodity qua commodity, but with that restriction because the commodity is identified by the trade-mark, brand, or name of the producer or owner. The essence of the statutory violation then consists not in the bare disposition of the commodity, but in a forbidden use of the trade-mark, brand, or name in accomplishing such disposition. The primary aim of the law is to protect the property —namely, the good will—of the producer, which he still owns. The price restriction is adopted as an appropriate means to that perfectly legitimate end, and not as an end in itself."

and later at page 195 of 299 U.S., at page 145 of 57 S.Ct.:

"The ownership of the good will, we repeat, remains unchanged, notwithstanding the .commodity has been parted with. Section 2 of the act does not prevent a purchaser of the commodity bearing the mark from selling the commodity alone at any price he pleases. It interferes only when he sells with the aid of the good will of the vendor; and it interferes then only to protect that good will against injury. It proceeds upon the theory that the sale of identified goods at less than the price fixed by the owner of the mark or brand is an assault upon the good will, and constitutes what the statute denominates 'unfair competition'. See Liberty Warehouse Co. v. Burley Tobacco Growers' Ass'n, 276 U.S. 71, 91–92, 96–97, [48 S.Ct. 291, 295, 296, 72 L.Ed. 473]. There is nothing in the act to preclude the purchaser from removing the mark or brand from the commodity—thus separating the physical property, which he owns, from the good will, which is the property of another—and then selling the commodity at his own price, provided he can do so without utilizing the good will of the latter as an aid to that end."

Since passage of the McGuire Act, the constitutionality of the application of state fair trade laws to transactions in interstate commerce has been upheld as to non-signers in Sunbeam Corporation v. Richardson, 6 Cir., 1957, 243 F.2d 501; Norman M. Morris Corporation v. Hess Bros., Inc., 3 Cir., 1957, 243 F.2d 274, 64 A.L.R.2d 750; and Schwegmann Bros. Giant Super Markets v. Eli Lilly & Company, 5 Cir., 1953, 205 F.2d 788, certiorari denied 346 U.S. 856, 74 S.Ct. 71, 98 L.Ed. 369, 346 U.S. 905, 74 S.Ct. 217, 98 L.Ed. 404. Further, in two state court cases involving this issue, the Supreme Court has refused review for lack of a substantial federal question. General Electric Company v. Masters, Inc., 1954, 307 N.Y. 229, 120 N.E.2d 802, appeal dismissed, 1954, 348 U.S. 892, 75 S.Ct. 215, 99 L.Ed. 701; Lionel Corporation v. Grayson-Robinson Stores, 1954, 15 N.J. 191, 104 A.2d 304, appeal dismissed, 1954, 348 U.S. 859, 75 S.Ct. 87, 99 L.Ed. 677.

G.E.M. attempts to distinguish the Old Dearborn case upon the ground that there a burden had been imposed upon the very product with which the offending retailer dealt; the contract upon which the manufacturer relied had been reached with the wholesaler from whom the offending retailer had purchased. Here, G.E.M. points out, it has not purchased from a contracting wholesaler.

We do not regard this distinction as valid. The language of the Supreme Court does not confine itself to situations

involving interference by the offending retailer with contractual obligations binding upon one from whom he purchased the goods.[3] We see no reason for so confining the decisions.[4] On the contrary, the quoted passages suggest its application to the facts of the case at bar.

■ Since the owner of the trademark has a continuing and protectible interest in the property of trademarked goods owned by another, he has a right, in the protection of his interest, to impose a condition upon the resale of that property. Since the nonsigning retailer acquired the commodity with notice of the condition, enforcement did not violate due process.

We conclude that the application of the Hawaii Fair Trade Act, under the McGuire Act, to non-signers is not a violation of due process.

G.E.M. next contends that Johnson & and Johnson cannot claim the protection of the McGuire Act for the reason that Johnson & Johnson falls within an exception specified in § 1 of the Sherman Act and, in the following language, in the McGuire Act, 15 U.S.C. § 45(a) (5):

> "Nothing contained in paragraph (2) of this subsection shall make lawful contracts or agreements providing for the establishment or maintenance of minimum or stipulated resale prices on any commodity referred to in paragraph (2) of this subsection, between manufacturers, or between producers, or between wholesalers, or between brokers, or between factors, or between retailers, or between persons, firms, or corporations in competition with each other."

■ Johnson & Johnson acted not only as manufacturer, but as wholesaler, and in that capacity made sales direct to retailers. It was thus (G.E.M. asserts) in competition with wholesalers dealing in its products.

G.E.M., upon this point, relies upon United States v. McKesson & Robbins, 1956, 351 U.S. 305, 76 S.Ct. 937, 100 L. Ed. 1209. The appellee in that case was a manufacturer of drug products and was also the largest drug wholesaler in the United States. In its sales operations it acted through seventy-four wholesale divisions. These divisions sold to retailers and also to certain independent wholesalers, each of whom was in direct competition with the wholesale division of appellee from which it had bought. Appellee required of its wholesale divisions that they sell to no independent wholesaler without securing a fair trade agreement to adhere to prices fixed by the appellee. The United States sought injunctive relief against the appellee. It charged that the fair trade agreements were not immunized by the Miller-Tydings Act or the McGuire Act and were in violation of § 1 of the Sherman Act.

The court sustained the position of the government, stating in 351 U.S. at page 313, 76 S.Ct. at page 942:

> "Congress thus made as plain as words can make it that, without regard to categories or labels, the crucial inquiry is whether the contracting parties compete with each other. If they do, the Miller-Tydings and McGuire Acts do not permit them to fix resale prices."

The court, however, made it plain that it was *competition* with which it was concerned. Emphasizing the lack of ambiguity in the proviso, it stated in 351 U.S. at page 315, 76 S.Ct. at page 943:

> "It excludes from the exemption from the per se rule of illegality resale price maintenance contracts between firms competing on the same functional level."

and in 351 U.S. at page 309, 76 S.Ct. at page 940 it stated:

> "The issue presented is a narrow one of statutory interpretation. The

---

3. See Lumley v. Gye, 1853, 2 Ell. & Bl. 216; Restatement, Torts, § 766 (1939).

4. We note that the Sunbeam, Morris, Schwegmann and Lionel cases, supra, appear to involve factual situations similar to ours, and that no such distinction was there made.

Government does not question the so-called vertical 'fair trade' agreements between McKesson and retailers of McKesson brand products. It challenges only appellee's price-fixing agreements with independent wholesalers with whom it is in competition."

The case is thus distinguishable from the case at bar. Here Johnson & Johnson, not selling at retail to consumers,[5] contracted with retailers in the Honolulu area with whom it was not in competition. The price fixing contracts were vertical and not horizontal agreements.

We conclude that the fair trade contracts of Johnson & Johnson were valid.

Affirmed.

5. Compare Esso Standard Oil Co. v. Secatore's, Inc., 1 Cir., 1957, 246 F.2d 17, certiorari denied 355 U.S. 834, 78 S.Ct. 54, 2 L.Ed.2d 46.