NORMAN'S ON THE WATERFRONT, INC.,
Plaintiff

v.

REUBEN B. WHEATLEY, COMMISSIONER OF
FINANCE AND CHAIRMAN OF THE BOARD OF
ALCOHOLIC BEVERAGES, AND THE BOARD OF
ALCOHOLIC BEVERAGES, Defendants

A.H. RIISE LIQUOR STORE, INC., CHARLES
BELLOWS & CO., LTD., THE GENERAL TRADING
CORPORATION, AND INTERNATIONAL LIQUORS,
INC., Interveners

Civil No. 95-1969

District Court of the Virgin Islands
Div. of St. Thomas and St. John

August 14, 1970

**CHRISTIAN,** *Chief Judge*

## MEMORANDUM

This is an action for declaratory relief and injunction against enforcement of the Virgin Islands Alcoholic Beverages Fair Trade Law, 8 V.I.C. §§ 150–160. The action is now before the Court on plaintiff's motion for a preliminary injunction.

The statute under attack provides that each producer, importer or wholesaler of a brand of alcoholic beverage must file a wholesale price schedule which will fix the price to prevail on all sales of that brand in the Virgin Islands, 8 V.I.C. § 152; permits contracts between purchasers and sellers of alcoholic beverages for fixing a resale price, id. § 153; and requires the filing of a minimum retail price schedule for each brand of alcoholic beverage sold at retail in the Virgin Islands, id. § 156, which is enforceable against every retailer of that brand by action for damages, id. § 155, or by license revocation, id. § 160.

■ The District Court of the Virgin Islands is empowered to grant declaratory relief under Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 (1964), provided an "actual controversy" exists between the parties. Ottley v. DeJongh, 3 V.I. 229, 149 F.Supp. 75 (D.C.V.I. 1957).

■ Plaintiff is a retailer of alcoholic beverages who has relied upon price competition for securing retail sales, largely through the marketing device of discount coupons.

The uniform price schedules contemplated by the statute will adversely affect plaintiff's business by precluding further price competition, and accordingly an actual controversy exists between him and the administrators of the statute, who are the defendants in this action.

## I

■ Every enactment of the Virgin Islands Legislature must be measured against the power granted by section 8(a) of the Revised Organic Act of 1954, 48 U.S.C. § 1574 (1964), which provides in part:

> The legislative authority and power of the Virgin Islands shall extend to all rightful subjects of legislation not inconsistent with this Act or the laws of the United States made applicable to the Virgin Islands. . . .

■ The price fixing scheme under review is clearly inconsistent with section 3 of the Sherman Act, 15 U.S.C. § 3 (1964), which is applicable to the Virgin Islands. Section 3 proscribes, "(e)very contract, combination in form of trust or otherwise, or conspiracy, in restraint of trade or commerce in any Territory . . . ." Price fixing is a per se violation of section 3 of the Sherman Act equally as much as it is a per se violation of section 1. United States v. National Association of Real Estate Boards, 339 U.S. 485 (1950). Commenting on a Louisiana price fixing scheme similar to that of the Virgin Islands, Justice Douglas stated:

> It is clear from our decisions under the Sherman Act that this interstate marketing arrangement would be illegal, that it would be enjoined, that it would draw civil and criminal penalties, and that no court would enforce it. Fixing minimum prices, like other types of price fixing, is illegal per se. (Citations omitted.) Resale price maintenance was indeed struck down in Dr. Miles Medical Co. v. Park & Sons Co., 220 U.S. 373. The fact that a state authorizes the price fixing does not, of course, give immunity to the scheme, absent approval by Congress. Schwegmann Brothers

v. Calvent Distillers Corp., 341 U.S. 384, at 386 (1951). See also Hudson Distributors v. Eli Lilly, 377 U.S. 386, at 395 (1964).

██ The Louisiana statute invalidated in Schwegmann required a single resale price contract before the price fixed in that contract could be enforced against other retailers, whereas the Virgin Islands statute, 8 V.I.C. §§ 156–157 takes effect upon filing of a minimum price schedule and is not conditioned on the existence of a contract. But this distinction does not dictate a different result under the Sherman Act. This Court can discern no difference between the enforcement of a price found in a contract against strangers to the contract, and the enforcement against all sellers of a price found in a notice filed with the state. The contract required by the Louisiana statute was a mere formality that did not prevent that statute from being functionally equivalent to the Virgin Islands statute. In neither case is the price fixing consensual; in both cases it is based on the coercive power of the state. As the Court said in Schwegmann, "when a state compels retailers to follow a parallel price policy, it demands private conduct which the Sherman Act forbids. See Parker v. Brown, 317 U.S. 391, 350." 341 U.S. at 389. The act of filing a minimum retail price schedule under section 156 may not be a "contract." But this act of filing, which initiates a price fixing arrangement with the aid of the statute, is an "affirmative action to achieve uniform adherence" to a fixed price and the filing party can be fairly called an "organizer of a price-maintenance combination or conspiracy in violation of the Sherman Act." See United States v. Parke, Davis & Co., 362 U.S. 29, at 47 (1960). This combination, forged with the assistance of the state statute, violates the Sherman Act, even though it is unaccompanied by a contract or express agreement.

A Virgin Islands statute that requires and assists activities proscribed by the Sherman Act, as does the statute

75

under review, is "inconsistent" with the laws of the United States and accordingly must fall, unless saved by another act of Congress.

## II

Defendants argue that the McGuire Act, 15 U.S.C. § 45(a) (1964)[1] rescues the Virgin Islands Alcoholic Beverages Fair Trade Law from the Sherman Act. The McGuire Act provides in pertinent part that:

Nothing contained in . . . any of the Antitrust Acts shall render unlawful any contracts or agreements prescribing minimum or stipulated prices, or requiring a vendee to enter into contracts or agreements prescribing minimum or stipulated prices, for the resale of a commodity . . . which is in free and open competition with commodities of the same general class produced or distributed by others, when contracts or agreements of that description are lawful as applied to intrastate transactions under any statute law or public policy now or hereafter in effect in any state, Territory or the District of Columbia in which such resale is to be made . . . . 15 U.S.C. § 45(a)(2) (1964).

Subsection (d)(3) provides that the enforcement of these agreements under local law against both signers and non-signers of the agreement will also be exempt from the Antitrust laws.[2]

██ This statute immunizes from the Sherman Act price fixing schemes entered pursuant to laws such as the

---

[1] The Miller-Tydings Act, 50 Stat. 693, passed as an amendment to 15 U.S.C. § 1, is essentially the same as 15 U.S.C. § 45(a)(2) quoted in text below. It is not clear whether the Miller-Tydings Act was intended to amend section 3 as well as section 1, but in any case defendants rely exclusively on the McGuire Act. The McGuire Act added to the Miller-Tydings Act a provision that exempted from the Sherman Act the enforcement of price fixing contracts against non-signers, the practice that Schwegmann Bros. v. Calvert Distillers Corp., supra, had declared unlawful under the Sherman Act.

[2] Since the McGuire Act exempts and permits enforcement of price-fixing "contracts and agreements" only, it is doubtful whether the price filing system established by the Virgin Islands statute, which entails no contract or agreement, falls within the literal meaning of the act. But the Court prefers not to rely on this mechanical reading of the McGuire Act, since the defect, if any, could be cured by a formal, but functionally empty, amendment to the statute, requiring that the price be fixed in a contract as a prerequisite to enforcement.

76

Virgin Islands Alcoholic Beverages Fair Trade Law, provided that two conditions are met: (1) The commodity to which the price fixing scheme applies must be in "free and open competition" with other similar commodities; and (2) the price fixing scheme must be "lawful as applied to intrastate transactions" in the territory.[3] This Court need not determine whether the first condition is satisfied,[4] since I find that the second condition is not.[5]

---

[3] As one court has succinctly stated in reference to this phrase, "you simply do not have intrastate transactions in a territory or in the District of Columbia. You can only have those inside of a state." Sunbeam Corp. v. Gem Jewelry Co., 157 F.Supp. 838 (D.Haw. 1957). The Court is thus confronted with the task of resolving the inconsistency of applying the term "intrastate transaction" to territories. One alternative is to judicially delete the word territory as inconsistent with the term intrastate. However, it is a settled rule of statutory construction that every word of a statute be given effect if a reasonable interpretation can be rendered that does not conflict with legislative intention. I therefore reject the solution of judicial surgery, since the application of the word "intrastate" can be applied to the word "territory" without doing violence to the intent of Congress. In the context of this section, "intrastate" can be interpreted to be a shorthand reference to commerce, whether in a state, territory or the District of Columbia, that is wholly local. Therefore, in its application to territories, "intrastate" will be taken to read "intraterritorial."

[4] There have been few reported decisions interpreting the phrase "free and open competition." Therefore, there is little to guide the Court in deciding how far short of monopoly a market structure must be in order to satisfy this condition. In this case, the Virgin Islands statute ensures that in the market of imported alcoholic beverages, there will be no competition that is not also subject to price-fixing. Whether a market occupied solely by commodities sold pursuant to price-fixing arrangements can be labeled "free and open" is a question which this Court does not now attempt to answer. Cf. Eastman Kodak v. Home Utilities Co., 138 F.Supp. 670, 674–77 (D.Md. 1956), modified on other grounds, 234 F.2d 766, cert. granted, 352 U.S. 821, petition for cert. dismissed, 352 U.S. 956 (1957). The problem is compounded by the nature of the liquor trade in the Virgin Islands. From facts stipulated by the parties, it appears that there are 45 licensed wholesalers of alcoholic beverages, of whom a substantial number do not engage in wholesaling. Aside from wines, there are about 150–200 brands marketed by those wholesalers who are active. Generally, brands are handled on an exclusive basis. There is some concentration among these active wholesalers; for example, two of the four intervenors in this case wholesale 52 brands between them.

Moreover, the active wholesalers are not altogether independent of one another. For example, three of the four intervenors' officers are as follows:

A.H. Riise Liquor Store, Inc.:
 President Isadore Paiewonsky
 Vice President Michael Paiewonsky
 Secretary Harry Gould
 Treasurer Bert Paiewonsky
Chas. Bellows & Co. Ltd.:
 President · John Hortrich

 Unlike section 1 of the Sherman Act, which applies to commerce among the states and with foreign nations, section 3 applies with respect to local commerce in a territory as well as commerce having effect outside the borders of the territory. The greater reach of section 3 arises from the authority of Congress, under article IV, section 3 of the Constitution to "make all needful Rules and Regulations respecting the Territory," whereas section 1 depends upon the narrower Commerce Clause for its constitutional support. Accordingly, the law with respect to resale price-fixing schemes applicable to local commerce in the Virgin Islands is provided by section 3 of the Sherman Act, and under section 3 such schemes are clearly unlawful. However, the McGuire Act requires that resale price-fixing schemes be lawful as applied to local commerce before the exemption that it provides from the Antitrust laws will take effect. Therefore, until section 3 is amended to permit resale price-fixing in local transactions in the Virgin Islands, the McGuire Act exemption can have no effect.

The United States Court of Appeals for the Ninth Circuit, when presented with the question of applying the McGuire Act to a territory, ruled that the McGuire Act itself was an amendment of section 3 permitting the ter-

---

| | |
|---|---|
| Vice President | Michael Paiewonsky |
| Secretary | Rufus Martin |
| Treasurer | David Puritz |
| International Liquors, Inc.: | |
| President | Leayle Levi |
| Vice President | Michael Paiewonsky |
| Secretary-Treasurer | Alfred David Puritz |
| Asst. Secretary | Rosemary Scharf |
| Asst. Treasurer | Bernard Paiewonsky |

[5] A third condition, provided in section 45(a)(5), excludes from the shelter of the McGuire Act price-fixing agreements between competitors. Although the question is not presently before the Court on this action for declaratory judgment, the Court observes that nearly all of the wholesalers of alcoholic beverages in the Virgin Islands are also involved in the retail trade. Therefore, their fixing the prices of other retailers would probably be in violation of the Sherman Act.

ritories to enact resale price-fixing laws. G.E.M. Sundries Co. v. Johnson & Johnson, Inc., 283 F.2d 86 (9 Cir. 1960).[6] The court's reasoning is limited to one brief paragraph. The court notes that, under the McGuire Act, statutes in effect in territories are among those that can immunize price-fixing agreements from the Antitrust Acts and concludes from this that:

> The right enjoyed by the states to regulate their internal affairs in this area has thus been expressly extended to the territories. 283 F.2d, at 89.

This Court would not attempt such an ambitious leap from the bare language of the McGuire Act to the conclusion that Congress intended that Act to affect the local law of the territories. Both references to territories in section 45(a) are made in the context of giving state laws an effect in interstate and foreign commerce hitherto denied them by the Sherman Act and the Commerce Clause. It is improbable that Congress would revise its regulation of the internal affairs of a territory under article IV, section 3 by means of a cryptic reference in a statute that ostensibly deals with the regulation of commerce pursuant to the Commerce Clause. I am particularly reluctant to attach this strained reading to the act when there is a plausible alternative interpretation of the Act's reference to territories. Congress might have intended to give to any law that it might, in the future, enact permitting resale price-fixing in the local commerce of a territory, or the District of Columbia, the same effect in commerce beyond its borders that similar state laws have under the McGuire Act. This interpretation gives symmetry to the application of the Act, recognizing that the McGuire Act

---

[6] A district court had earlier invalidated the Hawaiian statute holding that section 3 was not amended by the McGuire Act. Sunbeam Corp. v. Gem Jewelry Co., 157 F.Supp. 838 (D.Haw. 1957). But cf. Esterbrook Pen Co. v. San Juan F. Vilarino 5 and 10, 144 F.Supp. 309 (D.P.R. 1956), where the Puerto Rican fair trade statute was upheld without mention of the Sherman Act.

amends section 3 to the same extent, as well as in the same manner, as section 1. But it allows no further expansion of this exception to antitrust policy than is required by the language of the Act.

The Sherman Act, encompassing a broad public policy of long standing, was "designed to be a comprehensive charter of economic liberty aimed at preserving free and unfettered competition as the rule of trade." *Northern Pacific Railway Co. v. United States,* 356 U.S. 1, 4, 78 S.Ct. 514, 517, 2 L.Ed.2d 545 (1958). Congress has carved out certain exceptions to this rule. "But we are bound to construe them strictly", as the Supreme Court has said in specific reference to the McGuire Act, "since resale price maintenance is a privilege restrictive of a free economy." *United States v. McKesson & Robbins, supra,* 351 U.S. 305, at 316, 76 S.Ct. 937, 100 L.Ed. 1209.

It is not for this Court, absent a clear and unequivocal mandate from Congress, to further expand an exception to this "rule of trade" by interpreting the McGuire Act as changing the law that applies to the local commerce of the Virgin Islands.

### III

The validity of the Virgin Islands statute is also unaffected by the 21st Amendment to the Constitution, which provides in section 2:

The transportation or importation into any state, territory or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.

The resale price-fixing scheme under review affects the sales of alcoholic beverages. Though all alcoholic beverages subject to the statute are imported, 8 V.I.C. § 151, the statute does not regulate importation or transportation.

As stated in *Hornsby v. Allen,* 326 F.2d 605 (5 Cir. 1964),

80

although a state may, under the 21st Amendment, discriminate against imports of intoxicating beverages . . . the Amendment does not confer any other powers . . . . "The Twenty-First Amendment did not clothe the State's right to control the sale of liquor with any higher degree than it had over the sale of other commodities within the State." (Citation omitted). 326 F.2d, at 609.

Indeed in Schwegmann Brothers v. Calvert Distillers Corp., supra, to name but one case, the Court addressed the question of the validity of resale price-fixing statutes in the context of their application to alcoholic beverages without stopping to mention the 21st Amendment.

██ ██ However, I can dispose of the issue in this case without answering the question whether a resale price-fixing statute limited to alcoholic beverages is protected from the Sherman Act by the 21st Amendment. The Amendment only protects valid laws of a territory, and I have previously found the Virgin Islands statute to be invalid because it is inconsistent with section 3 of the Sherman Act, and thus exceeds the powers granted to the Virgin Islands Legislature by the Organic Act. Though the 21st Amendment shifted the balance of power to regulate alcoholic beverages in interstate commerce, it did not purport to alter the relationship between Congress and the territories under article IV, section 3. I cannot improve on the reasoning of the United States Court of Appeals for the First Circuit in striking down a Puerto Rican excise tax on beer and malt products as inconsistent with the Puerto Rican Organic Act:

The Twenty-First Amendment simply withdraws the exclusive control of Congress, under the Commerce Clause (article 1, section 8, cl. 3), over commerce in intoxicating liquors, when their importation is in violation of the laws of a state, territory, or possession of the United States. It does not confer power upon Puerto Rico as to the enactment of its laws. That power it acquired by virtue of its Organic Act, which Congress is authorized to prescribe by virtue of article 4, section 3, cl. 2, of the Constitution.

Sancho v. Corona Brewing Corp., 89 F.2d 479, 481 (1 Cir. 1937), cert. denied, 302 U.S. 699.

Because I find the Virgin Islands Alcoholic Beverages Fair Trade Act, 8 V.I.C. §§ 150–160, invalid under the Sherman Act and section 8(a) of the Organic Act, I do not reach plaintiff's argument that the statute denies him due process of law.

 Where issues of fact remain, permanent relief usually will not be granted on a motion for a preliminary injunction. However, the court's decision in this case turns solely on questions of law. The parties have fully briefed and argued the legal issues dispositive of the case with the understanding that the court would enter a final judgment on the motion for preliminary injunction. Therefore, there is no reason to delay a final decision in this case. See Hurwitz v. Directors Guild of America, 364 F.2d 67 (2 Cir. 1966).

The foregoing memorandum constitutes my conclusions of law as to the validity of 8 V.I.C. §§ 150–160. Plaintiff is entitled to a permanent injunction against the enforcement of this statute.