**STALLWORTH TIMBER COMPANY, Appellant**

**v.**

**TRIAD BUILDING SUPPLY, Appellee**

D.C. Civ. App. No. 1993-255

T.C. Civ. No. 551-1991

District Court of the Virgin Islands

Div. of St. Croix

June 18, 1997

Nancy V. Young, Esq., (Rohn & Cusick) (of Counsel), and Michael M. Lee, Esq., Christiansted, St. Croix, U.S.V.I., *for Appellant*

Derek M. Hodge , St. Croix, U.S.V.I., *for Appellee*

MOORE, *Chief Judge*, FINCH and MEYERS, *Judges*

### OPINION OF THE COURT

PER CURIAM

In June 1990, Stallworth Timber Company, Inc. ["Stallworth"] and Triad Building Supply, Inc. ["Triad"] entered into an agree-

ment whereby Stallworth was to supply lumber and plywood, as well as hardware, to Triad for the purpose of selling the items for a mutual profit. Before the formation of this agreement, Stallworth had shipped a large stock of lumber and plywood for a third party who eventually was unable to furnish Stallworth with the necessary financial guarantees for purchase of the material. These materials provided impetus for the Stallworth-Triad agreement under the terms of which Stallworth would supply Triad every six to eight weeks with certain lumber and plywood to be sold by Triad. The parties agreed that the retail selling margin was approximately 35%, to be split 60% to Triad, 40% to Stallworth. Triad would make payments of C.I.F.[1] costs, plus 40% of the gross profits on sales to Stallworth on an "as sold" basis. Payments were due within 14 days of the end of each monthly reporting period. The parties also discussed the sale of hardware for which Triad agreed to make installment payments on a 30/60/90/120 day plan.

Triad drafted and forwarded a summary of the May 17 agreement to Stallworth for review and editing. The draft agreement was never formally executed but the parties nevertheless began dealing with one another to some extent consistently with the draft provisions.

In July 1990, Triad's supply of certain fast-moving inventory ("critical inventory") became low and Triad placed a $120,000 order with Stallworth to replenish such inventory. Also, at an August hardware show, Triad ordered hardware which was to be shipped two weeks later. The orders of critical inventory and the hardware were shipped at the same time. During some time in August 1990, Triad began making untimely and sporadic payments. By September, Triad's orders for critical inventory had increased to a value of $217,000.

Due to unexpected maintenance problems, the barge carrying the critical inventory and hardware did not arrive in St. Croix until about November 21, 1990. Upon arrival, Stallworth, however, only released to Triad approximately $40,000 of lumber and the $33,000 of hardware ordered at the hardware show.

---

[1] The term "C.I.F." means the costs of the goods, and the insurance and freight necessary to delivery the goods to a specified destination. V.I. Code Ann. tit. 11A, § 2-320.

This action began on June 18, 1991 when Stallworth filed a suit for debt against Triad. In reply, Triad filed a counterclaim for breach of contract. A special master was appointed by the trial judge, who concluded the value of Stallworth's debt claim to be $104,641. A bench trial was conducted to determine Triad's breach of contract claim.

After receiving testimony and reviewing submitted proposed findings of fact and conclusions of law, the lower court found Stallworth entitled to judgment in the amount of $104,641 and awarded Triad damages in the amount of $213,744 on its counterclaim. Stallworth moved to amend the findings of fact, to alter or amend the judgment, or for a new trial with respect to the award to Triad. The trial court denied the motion and Stallworth appealed the award of damages to Triad on its breach of contract counterclaim. The judgment against Triad on Stallworth's debt claim was not at issue here.

### DISCUSSION

### I. Standard of Review

■ Questions of law are subject to plenary review. *Nibbs v. Roberts*, 31 V.I. 196, 204 (D.C.V.I. 1995). The clearly erroneous standard of review is applied to the·factual findings of the trial court. V.I. Code Ann. tit. 4, § 33.

### II. Stallworth's Breach of The Agreement[2] Terms

■ The crux of Stallworth's argument centers on the proposition that it did not breach the agreement by refusing to make further deliveries to Triad. Rather, Stallworth contends that its duty to deliver was excused by Triad's failure to pay for prior deliveries. The agreement is governed by the Uniform Commercial Code ("U.C.C.") as adopted in the Virgin Islands (V.I. Code Ann. tit. 11A, § 1-101) because it involved the sale of goods. On those issues where the U.C.C. is silent, the panel then turns to common law, or the Restatement, for assistance. V.I. Code Ann. tit. 1, § 4.

---

[2] The trial court specifically found that the parties entered into a joint venture. The determination of the nature of their agreement is not necessary for purposes of our analysis at this stage. Accordingly, the conduct of the parties will be referred to as an "agreement."

■ Restatement of (Second) Contracts § 235 provides that when performance of a duty under a contract is due, any non-performance is a breach. A breach which would justify or excuse non-performance of a party's remaining duty, however, must be an uncured **material** breach. Restatement (Second) of Contracts § 237. In determining whether a breach is material, the following circumstances are significant:

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Restatement (Second) of Contracts § 241. Thus, in order for Stallworth to sustain its claim of excused performance, it was necessary for the court to have found that Triad materially breached the agreement by failing to make timely payments. If Triad was not in material breach, then Stallworth's failure to perform was not excused. No finding of material breach was made by the trial judge.

The lower court clearly recognized that Triad breached the agreement and took it into account in its judgment, contrary to Stallworth's suggestion here on appeal. The judge held Triad liable for the undisputed amount of debt Triad was in arrears to Stallworth. The judge did not determine, however, whether or not that breach was a "material" breach. The court examined the agreement and simply concluded that Triad had detrimentally relied on representations made by Stallworth on which Stallworth failed to make good. In neither its analysis of Triad's liability nor its analysis of Triad's counterclaim did the judge make a finding on the materiality of Triad's breach.

■ In this jurisdiction, a trial court must find and articulate the facts with particularity so the parties and the appellate court will be informed of the basis for the determination. *See Pant v. Government of the Virgin Islands*, 30 V.I. 259 (D.C.V.I. 1994); *see also Kruger v. Purcell* , 4 V.I. 361, 300 F.2d 830 (3d Cir. 1962); *accord Fehringer v. Bluebeard's Castle, Inc.*, 6 V.I. 471, 395 F.2d 851 (3d Cir. 1968); Fed. R. Civ. P. 52. A judge's failure to recite a finding necessary to the determination of liability has compelled this Court to vacate and remand a judgment for the trial judge to make such findings. *Pant*, 30 V.I. at 266-67. In *Pant*, this Court remanded a wrongful death award for the lower court to make specific findings whether the Government had notice of a dangerous condition, an essential element vital in such a fact-intensive case.

■ In the case *sub judice*, the trial court's findings of fact and conclusions of law do not include whether Triad's breach of the agreement was material, which is an essential prerequisite for the determination of ultimate liability on the breach of contract counterclaim. On such an important issue as the materiality of Triad's breach of contract, we will not infer that Stallworth's performance was not excused and Triad's breach was not material simply because the judge found detrimental reliance and awarded damages on Stallworth's breach. Accordingly, we remand this matter to the trial court for a specific finding on whether Triad's breach was material.

## III. Calculation of Damages

Since the issue of damages may recur before the lower court on remand, we comment on the damages questions now before us.

### A. *Lost Margin and Lost Counter Sales*

Stallworth claims that Triad failed to meet its burden to prove that Stallworth's breach was the proximate cause of its alleged losses. Similarly, Stallworth claims that the damages alleged are speculative and therefore should not have been awarded. In the alternative, Stallworth contends the losses should have been allocated in proportion to the profit ratio agreed upon by the parties.

54

■■ To sustain a damage award for lost profits, there must be sufficient proof that the lost profits were proximately caused by the defaulter's breach. Where the loss cannot be allocated between those caused by the breach and those resulting from some other cause, the entire claim may be rejected. The court below found that a joint venture existed. Joint Appendix ("J.A.") Vol. I at 85. The allocation of lost profits should, therefore, be consistent with the terms of the agreement. To the extent the agreement fails to provide this information, an alternative means of allocation must be considered. The law regarding the allocation of losses in a joint venture where there is no express agreement by the joint venturers on the division of losses is not clearly established. In this case, we agree with the lower court that losses should be shared in the same proportion as profits were to be shared. The sharing of losses in proportion to agreed profit sharing is a generally accepted means of handling the issue in many jurisdictions.[3]

The record provides that the parties agreed to split gross profits 60% to Triad and 40% to Stallworth, and sought to achieve a gross margin of total sales of 35 to 36%. The final award determined by the lower court on remand should be adjusted accordingly, taking into account the costs Triad would have incurred in the normal course of its sale of such goods.

B. *Loss of Goodwill*

Stallworth also challenges the lower court's acceptance of the findings of the Master's Report in its conclusion regarding the amount recoverable for loss of goodwill. Specifically, Stallworth contends that the report lacks sufficient probative value to sustain the award.

■ The goodwill of a business represents the expectation of continued patronage by the public and its reputation with its customers. Goodwill is intangible in nature, although it does constitute a form of property that may be valued.

---

[3] *Accord Bank of St. Louis v. Morrissey*, 597 F.2d 1131 (8th Cir. 1978); *Halloran v. Ohlmeyer Communications Co.*, 618 F. Supp. 1214 (S.D.N.Y. 1985); *McNeill v. Allen*, 534 P.2d 813 (Colo. Ct. App. 1975); *Edwards v. Thompson*, 336 N.W.2d 612 (N.D. 1983); *Producer's Livestock Marketing Ass'n v. Christensen*, 588 P.2d 156 (Utah 1978).

■ ■ Goodwill is an amorphous concept which requires a sufficient and specific factual basis for support. The determination of the existence and the value of goodwill is a fact-intensive process which depends on the circumstances of the specific case. *See Miller v. C.I.R.*, 333 F.2d 400 (8th Cir. 1964); *Pacific Coast Med. Enter. v. Department of Benefit Payments*, 140 Cal. App. 3d 197 (1983); *Baldwin v. Stuber*, 610 P.2d 160 (Mont. 1980). The burden is on the party seeking to establish goodwill to prove the components of goodwill in the particular situation. Although valuation need not be proved with mathematical precision, the best possible evidence must be considered. *See generally Master Records Inc. v. Backman*, 652 P.2d 1017 (Ariz. 1982); *Delano Growers Co-op Winery v. Supreme Wine Co.*, 473 N.E.2d 1066 (Mass. 1985). *But see Kinetico, Inc. v. Independent Ohio Nail Co.*, 482 N.E.2d 1345 (Ohio Ct. App. 1984).

The only evidence in the record to establish Triad's alleged loss of goodwill and its value came from the testimony of the Master, Mr. John Reed, who, incidentally, was also Triad's vice-president, director, and part owner. The record is devoid of any mathematical calculations used, nor was any value attached to the factors considered by Mr. Reed in arriving at his $100,000 estimation of the value of loss of goodwill. Mr. Reed testified that he made no calculations. In fact, he conceded that it was merely an estimate. In response to the judge's inquiry about the formula used for his estimation, Mr. Reed replied that it was based on customer relationships, Triad's ability to perform based on its past profit performance, the underlying value of any business (as determined by a third party who may be interested in purchasing the business), and the "book value," which Mr. Reed testified as being that amount of company assets less its liabilities. J.A. Vol. III at 161, 165.

■ While these factors may be generally accepted accounting principles and somewhat beneficial in valuing goodwill, Reed's testimony provides an inadequate foundation in the value of goodwill to be included in an award of damages.

■ ■ While there is a presumption of validity normally attached to a master's factual findings, they must be supported by substantial evidence and must be based on more than mere estimation grounded on intuition and speculation. *Devex Corp. v.*

*GNC*, 494 F. Supp. 1369 (D. Del. 1980), *aff'd*, 667 F.2d 347 (3d Cir. 1981); Fed. R. Civ. P. 53(e)(2). Furthermore, the youth of Triad makes a meaningful award for goodwill especially difficult. Chief elements in determining goodwill are the length of the business' existence, average profits, and likelihood of continuing business under the same name. *See Agricultural Servs. Ass'n v. Ferry-Morse Seed Co.*, 551 F.2d 1057 (6th Cir. 1977). It follows, then, that a relatively new business would have little if any established goodwill and Triad had only been in business since February 1990, approximately one and half years before this lawsuit. Considering the youth of the company and the highly speculative nature of Mr. Reed's testimony, it is highly unlikely that Triad has proved a loss of goodwill.

### CONCLUSION

Because the lower court failed to make a specific finding of materiality on the breach of contract counterclaim, and because an inference may not be made that such breach existed, the trial court's judgment of August 3, 1993 is vacated and the matter is remanded for further proceedings in accordance with this opinion.

### ORDER OF THE COURT

AND NOW, this 18th day of June, 1997, having considered the arguments and submissions of the parties; and for the reasons set forth in the Courtss accompanying Opinion of even date;

IT IS ORDERED AND ADJUDGED that the August 3, 1993 ruling of the Territorial Court is VACATED and the matter is REMANDED to the Territorial Court for further proceedings consistent with this Opinion.