**ANTON FELTON and JUNE FELTON, Plaintiffs**

**v.**

**SCOTT ELKINS and TAMMY ELKINS, Defendants.**

**SCOTT ELKINS, Defendant**

**v.**

**MARTY BEECHLER, ISLANDIA REAL ESTATE, INC.,**

**Third Party Defendants**

FELTON v. ELKINS

Civ. No. 2003-86

District Court of the Virgin Islands

Division of St. Thomas and St. John

December 29, 2004

GREGORY HODGES, ESQ., MICHELLE M. KOSTUN, ESQ., St. Thomas, U.S.V.I., *For plaintiffs*.

JOEL H. HOLT, ESQ., St. Thomas, U.S.V.I., *For defendants*.

MOORE, *District Judge*

## MEMORANDUM OPINION

(December 29, 2004)

This case involves the purchase of a condominium where the sellers, the Elkins, refused to close the transaction after the buyers, the Feltons, were seven business days late with the balance of the deposit due to anti-terrorist banking regulations and banking delay.

The Feltons bring four counts against the Elkins, including actions for specific performance, breach of contract, fraudulent conveyance, and fraudulent misrepresentation. In return, the Elkins have counterclaimed for breach of contract. Finally, Scott Elkins has brought a third party complaint against Marty Beechler and Islandia Real Estate, Inc. In this summary judgment motion, the only counts before the Court are the Feltons' claims against the Elkins for specific performance and breach of contract and the Elkins' counterclaim for breach of contract. For the reasons discussed below, I will order specific performance of the contract and find for the Feltons on the liability portion of their breach of contract claim. I will also deny the Elkins' cross-motion for summary judgment on their breach of contract counterclaim.

## I. FACTUAL BACKGROUND

On January 6, 2003, the Elkins and the Feltons entered into a written contract in which the Elkins agreed to sell and the Feltons agreed to purchase Unit B-1 of Battery Hill Condominiums located on St. John for $429,000.00. The Feltons are residents of London, England, and decided to purchase the property while in St. John on vacation. Pursuant to the contract, the Elkins paid a deposit of $1,000.00 on January 5th. The contract required the Feltons to provide written confirmation that a wire transfer of the balance of the deposit money, $41,900, had been initiated

by January 20 and for the Elkins to receive the funds by January 27. The contract included a provision that provided "Buyer will cooperate with Seller with any § 1031 Exchange Documentation." The contract also recited that it could only be changed by a written agreement signed by both sides. The Feltons were represented by St. John attorney Brian Morrisette. Real estate agents for the Elkins were William Dove of Tropical Properties and Marty Beechler of Islandia Real Estate, Inc.

On January 20, 2003, the Feltons instructed their U.K. attorney in writing to initiate a wire transfer in the amount of $41,900 to the Tropical Properties account. Mr. Felton then forwarded this letter to Beechler and Dove as notice of the Feltons' timely initiation of the wire transfer. Mr. Felton included a handwritten note on the letter explaining that new U.K. anti-terrorist banking regulations would cause a delay in the remittance of the balance of the deposit money. In addition, on January 20, Mr. Felton sent a letter to Morrisette, which was copied to Beechler, again giving notice of the new banking regulations and resulting delay. Mr. Felton also wrote a letter directly to Beechler, enclosing his letter of January 20 to Morrisette. In the letter, Mr. Felton expressed his belief that a slight delay did "not go to the heart of the contract." Neither Elkins, Beechler, nor Dove ever responded to the Feltons much less indicated that this delay would be a problem.

No wire transfer was received by January 27. Neither Elkins nor his agents, Beechler or Dove, notified the Feltons that the delay jeopardized the transaction, that the Elkins had suffered any inconvenience or damage, or that the contract had been terminated. On January 29, the Feltons notified Beechler in writing that due to regulatory delay at National Westminster Bank, the Feltons had instead initiated a wire transfer at Barclay's Bank. They apologized for the delay and in an act of good faith offered to advance the balance of the purchase price earlier than required by the contract "by however many days this deposit is late." National Westminister Bank ultimately issued a letter apologizing to the Feltons and accepting full responsibility for its delay.

On January 30, the Feltons forwarded a confirmation from Barclays to Beechler that the funds had been wired and "should reach the recipient account within two working days." On February 4, the funds had still not been received, and Mr. Elkins sent an e-mail to Dove instructing him to return the $1,000 deposit because he believed the contract was void due to the Feltons failure to make the January 27th payment. Beechler spoke

to Felton on February 5 but told Felton only that Mr. Elkins was threatening to call off the deal. Late on February 5, the full deposit amount was received by the Elkins. From February 5 to February 18, Beechler and Felton continued to communicate regarding the closing on the condominium and issues related to the condominium.

On February 18, Dove instructed Beechler to send a facsimile to the Feltons with an attached letter from the Elkins to Dove dated January 30 and faxed to Dove on February 4. The letter from the Elkins requested Dove to notify "all parties at once" that the Elkins declared the contract "null and void" because the balance of the deposit money had not been remitted within twenty-one days as required by the contract.

## II. STANDARD OF REVIEW

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Sharpe v. West Indian Co.*, 118 F. Supp. 2d 646, 648 (D.V.I 2000). The nonmoving party may not rest on mere allegations or denials, but must establish by specific facts that there is a genuine issue for trial from which a reasonable juror could find for the nonmovant. *See Saldana v. Kmart Corp.*, 84 F. Supp. 2d 629, 631-32, 42 V.I. 358 (1999), *aff'd in part and rev'd in part*, 260 F.3d 228, 43 V.I. 361 (3d Cir. 2001).

## III. LEGAL ANALYSIS

■ I find that the Elkins' attempt to terminate the contract was not justified under Virgin Islands law because the Feltons' delay in submitting the deposit was not a material breach of the contract. Under the Restatement, non-performance of a duty of a contract is a breach of that contract. Before a breach will justify non-performance of the non-breaching party's remaining duties, however, the breach must be material and remain uncured. *See* RESTATEMENT (SECOND) OF CONTRACTS §§ 235, 237, 240 (1979); *see also Stallworth Timber Co. v. Triad Bldg. Supply*, 968 F. Supp. 279, 282, 37 V.I. 49 (1997) (stating that whether a party's duties are discharged due to another party's breach of contract is governed by the Restatement pursuant to V.I. CODE ANN. tit. 1, § 4).

Section 235(2) of the Restatement establishes that "when performance of a duty under a contract is due any non-performance is a breach." Section 237 of the Restatement further explains that "it is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time." Comment b to section 237 elaborates that "in determining whether a failure of performance is material, the circumstances listed in § 241 should be considered."

In determining whether Feltons' breach is material and excused the Elkins' nonperformance under the contract, section 241 of the Restatement offers five circumstances to consider:

> a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
> b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
> c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
> d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
> e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

RESTATEMENT (SECOND) CONTRACTS § 241 (1979). Each of these circumstances weighs in favor of finding the Felton's breach was not material.

■ The Elkins were not deprived of any benefit which they reasonably expected. The Elkins argue that the breach by the Feltons deprived them of the certainty of being able to close on the specified day of the contract, something that was important to their proposed I.R.S. section 1031 land exchange. The sellers allege they were unable to look for other property to purchase because of the uncertainty caused by the Feltons. This argument is flawed. To remedy the breach, the Feltons offered to transfer the entire amount of the purchase price early, by the same number of days that the deposit was late. This offer was more than adequate to

ensure that the Elkins could have confidence that the transaction would be completed in accordance with the contract. Moreover, the deposit was delayed by only seven business days. This delay in and of itself could not have caused the Elkins to put off purchasing another property by more than these few days. The sellers have not pointed to any specific transaction that this slight delay prevented them from completing.

The other circumstances listed in section 241 also weigh in favor of finding no material breach of the contract. As the Elkins suffered no deprivation of any benefit under section 241(a), there is no injury for the Feltons to compensate. Thus, sections 241(b) and (d) favor the buyers. If the Felton's delay operated to discharge the Elkins' obligations under the contract, the Feltons would forfeit the benefit they reasonably expected to receive under the contract. Hence, section 241(c) strongly militates in favor of the Feltons.

Finally, the Feltons' conduct met the standards of good faith and fair dealing. They wrote no less than eight letters to the Elkins notifying them of the delay, the cause of the delay, and assuring them that they fully intended to complete the transaction of the contract. The Feltons provided documentation that the delay was not their fault, rather, it was due to banking regulations and banking error. On the other hand, the Elkins' and their agents' responses to these letters did not include any indication that they considered the contract void or that the delay represented a material breach of the contract. Indeed, for almost two weeks following the late receipt of the deposit money, the Elkins continued to deal with the Feltons as if they were going through with this transaction. In any event, the Feltons' offer to advance the closing date adequately compensated for any momentary anxiety this slight delay might have caused. In these circumstances, the delay in getting the full deposit to Elkins did not constitute a material breach of the contract.[1] Accordingly, I find that the plaintiff's delay in delivering the balance of

---

[1] The parties here included a "time is of the essence clause" with respect to the date of the closing but not the date for payment of the deposit. Ergo, neither party considered the date for payment of the deposit to be "of the essence" as long as it did not delay the closing date. Elkins argues that his inclusion of a provision requiring that the sellers cooperate with him to facilitate an I.R.S. section 1031 land exchange is a special circumstance that performance was essential. The Elkins, however, still had plenty of time to look for the other property to purchase before April 15, the deadline for the section 1031 land exchange.

the deposit was not a material breach of the contract and did not discharge the Elkins' from their contractual duties.

█ Additionally, I rule that the Feltons are entitled to specific performance of this contract for the sale of real property. *See* RESTATEMENT (SECOND) OF CONTRACTS § 360 comment e (1979) ("Contracts for the sale of land have traditionally been accorded a special place in the law of specific performance."). Because the Feltons' breach was not material, specific performance is an appropriate remedy. *See* RESTATEMENT (SECOND) OF CONTRACTS § 369 (1979). Illustration 2 to comment a is particularly instructive:

> A contracts to sell to B his farm, conveyance and payment to be made on May 1. A tenders a deed on May 1 but B is not then able to pay. B tenders payment on May 10 but A refuses to convey although the delay is not such as would discharge his remaining duties of performance and B sues A for specific performance. Specific performance may properly be granted, conditional on B paying A damages caused by the delay.

As in the illustration, specific performance of the contract shall be awarded because the Feltons did not materially breach the contract.

Based on the foregoing discussion, I find that the Elkins materially breached the contract by refusing to close on the specified date. Damages that the Feltons may have suffered from this breach shall be determined at trial. Accordingly, I will grant the Feltons' motion for summary judgment on the claims for breach of contract and specific performance and will deny the Elkins' motion for summary judgment on their counterclaim.