**GUARDIAN INSURANCE COMPANY, Plaintiff**
**v.**
**HANI KHALIL, Defendant**

Civil No. ST-08-CV-494

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

July 26, 2012

5

DENISE FRANCOIS, ESQ., Hodge & Francois, St. Thomas, USVI, *Counsel for Plaintiff.*

ESZART A. WYNTER, SR., ESQ., Law Offices of Eszart A. Wynter, Sr., P.C., Frederiksted, St. Croix, USVI, *Counsel for Defendant.*

CARROLL, *Judge.*

## MEMORANDUM OPINION

(July 26, 2012)

The Court has before it several motions pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] Plaintiff Guardian Insurance Company has filed a Motion for Summary Judgment on its Complaint. For the

---

[1] The practice and procedure in the Superior Court shall be governed by the Rules of the Superior Court and, to the extent not inconsistent therewith, by the Rules of the District

reasons stated herein, the Court will deny the Motion in part with respect to Guardian's claim for breach of contract and will grant the Motion in part with respect to Guardian's claims for indemnification and declaratory judgment. Guardian has also moved for summary judgment on Defendant Hani Khalil's Counterclaims. Finding no genuine issue of material fact with respect to all of the asserted counterclaims, and that Guardian is entitled to judgment dismissing the counterclaims as a matter of law, the Court will grant the Motion for Summary Judgment on the Counterclaims. In addition, Khalil has filed a Motion for Summary Judgment as to Plaintiff's Complaint. Khalil's Motion for Summary Judgment is not properly before the Court, since he has failed to follow the Local Rules of Civil Procedure. However, since the Court has decided to grant in part and deny in part Guardian's Motion for Summary Judgment on the Complaint, Khalil's Motion for Summary Judgment will be denied as moot.

## FACTS

Khalil owned a 1986 Mercedes Benz.[2] On March 20, 2002, Guardian executed and delivered an insurance policy to Khalil, wherein Guardian agreed to provide insurance for Khalil's vehicle for liability subject to the terms and conditions of the policy, for a term of one year, to expire on March 20, 2003.[3] Under the terms of the policy, Khalil expressly agreed, in writing, that the policy would not apply to any claim or loss arising from accidents which occurred while the insured vehicle was being operated by a person under the age of twenty-six years.[4] In addition, the policy exclusion form provided a space for Khalil to identify any underage drivers, and to pay an extra premium for coverage of any such persons, who would then be covered by the policy.[5] Khalil signed the

---

Court, the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure and the Federal Rules of Evidence. SUPER. CT. R. 7.

[2] Pl.'s Statement of Addt'l. Undisputed Material Facts ¶ 3; Def.'s Opp'n Pl.'s Mot. Summ. J. p. 1; Def.'s Answer ¶ 1; Pl.'s Ex. 2.

[3] Pl.'s Statement of Addt'l. Undisputed Material Facts ¶ 4; Def.'s Opp'n Pl.'s Mot. Summ. J. p. 1.

[4] Pl.'s Statement of Addt'l. Undisputed Material Facts ¶ 5; Pl.'s Ex. 3; Def.'s Answer ¶ 1.

[5] Pl.'s Statement of Addt'l. Undisputed Material Facts ¶ 6; Pl.'s Ex. 4.

7

exclusion form, but did not identify his son, Khalid Rahahleh, as an underage driver.[6]

On October 24, 2002, Khalil permitted Rahahleh, twenty-two years old at the time, to drive the Mercedes Benz.[7] On that day, Rahahleh was involved in a motor vehicle accident with Lizette Santos, the owner and operator of the other vehicle. Santos's son, aged seven, was a passenger at the time of the accident.[8]

Subsequently, Khalil filed a claim with Guardian for the damages to his vehicle along with an estimate of repairs dated November 7, 2002 for the cost of repairs to the Mercedes Benz.[9] On November 14, 2002, Santos submitted a claim against Khalil to Guardian for the damages to her vehicle and for bodily injury.[10] Guardian's claims department completed the standard Automobile Loss Notice for Santos's claim on November 14, 2002.[11] On November 26, 2002, Guardian's adjuster inspected the Mercedes Benz, took photographs thereof, and completed a Vehicle Appraisal Report.[12]

By letter dated November 21, 2002, Guardian advised Khalil that it was in receipt of a claim against Rahahleh, who had been identified as the person operating Khalil's vehicle on the date of the accident. Moreover, Guardian noted that Rahahleh was under the age of twenty-six at the time of the collision and informed Khalil to contact Guardian to provide a statement regarding the circumstances surrounding the use of the vehicle by the underage driver.[13] Guardian, by letter dated December 5, 2002, informed Khalil that the processing of his claim had been delayed because he had not provided a written statement.[14] On December 18, 2002, Khalil provided a signed written statement to Guardian stating that on October 24, 2002, he gave Rahahleh permission to use the vehicle and that during

---

[6] Pl.'s Statement of Addt'l. Undisputed Material Facts ¶ 7; Pl.'s Ex. 4.

[7] Pl.'s Statement of Addt'l. Undisputed Material Facts ¶ 8.

[8] Pl.'s Ex. 5; Def.'s Opp'n pg. 1; Pl.'s Statement of Addt'l. Undisputed Material Facts ¶¶ 9-11.

[9] Pl.'s Statement of Addt'l. Undisputed Material Facts ¶ 15; Pl.'s Ex. 9.

[10] Pl.'s Statement of Addt'l. Undisputed Material Facts ¶ 17.

[11] Pl.'s Statement of Addt'l. Undisputed Material Facts ¶ 17; Pl.'s Ex. 12.

[12] Pl.'s Statement of Addt'l. Undisputed Material Facts ¶¶ 17-18; Pl.'s Exhs. 12-15.

[13] Pl.'s Statement of Addt'l. Undisputed Material Facts ¶ 19; Pl.'s Ex. 17.

[14] Pl.'s Ex. 18; Pl.'s Statement of Addt'l. Undisputed Material Facts ¶ 20.

his use, Rahahleh was involved in an automobile accident.[15] In addition, Rahahleh, on that same day, provided a signed written statement to Guardian stating that on October 24, 2002, he borrowed Khalil's car and was involved in an automobile accident.

On January 29, 2003, Guardian completed Santos's claim for property damage and paid her $7,468.56 and, in exchange thereof, Santos signed and delivered to Guardian a Property Damage Release, releasing Guardian and Khalil from any and all property damage claims.[16] Subsequently, on March 27, 2003, Santos submitted another estimate for $167.94, which had not been included in her first repair estimate.[17] On April 1, 2003, Guardian paid Santos an additional $167.94 for repairs to her vehicle.[18]

On July 2, 2003, both Santos and her son, Shane Santos, commenced a civil action against Khalil and Rahahleh in the Superior Court of the Virgin Islands for bodily injury allegedly caused by the auto accident.[19] By letter dated July 18, 2003, Guardian sought reimbursement from Khalil in the amount of $7,468.56, representing Guardian's payment to Santos on her claim against Khalil's policy.[20] On August 4, 2003, Guardian retained the law firm of Bryant Barnes & Moss to defend Khalil and Rahahleh, and the attorneys filed an Answer to the Complaint in the civil case.[21] In a letter dated August 12, 2003, Guardian notified Khalil again about the pending lawsuit in the Superior Court and informed Khalil that Guardian would seek reimbursement for further costs incurred on his behalf.[22] On August 11, 2005, Guardian again notified Khalil about the pending litigation and that additional damages for bodily injury were being sought by Santos.[23]

On September 29, 2005, Guardian settled the civil matter with Santos and paid the sum of $10,000.00 to Santos in full and final settlement of

---

[15] Pl.'s Statement of Addt'l. Undisputed Material Facts ¶ 12; Pl.'s Exhs. 5 & 6.

[16] Pl.'s Statement of Addt'l. Undisputed Material Facts ¶ 22; Pl.'s Exhs. 19 & 20.

[17] Pl.'s Statement of Addt'l. Undisputed Material Facts ¶ 23; Pl.'s Ex. 21.

[18] Pl.'s Ex. 22; Pl.'s Statement of Addt'l. Undisputed Material Facts ¶ 24.

[19] Pl.'s Statement of Addt'l. Undisputed Material Facts ¶ 25; Pl.'s Ex. 23.

[20] Pl.'s Ex. 24; Pl.'s Statement of Addt'l. Undisputed Material Facts ¶ 26.

[21] Pl.'s Statement of Addt'l. Undisputed Material Facts ¶ 27; Pl.'s Ex. 25.

[22] Pl.'s Ex. 26; Pl.'s Statement of Addt'l. Undisputed Material Facts ¶ 28.

[23] Pl.'s Statement of Addt'l. Undisputed Material Facts ¶ 29; Pl.'s Ex. 27.

her bodily injury claims and obtained a release from further liability on behalf of Khalil and Rahahleh.[24] Subsequently, on January 25, 2006, Guardian reached a settlement with Shane Santos, the minor, in the amount of $7,500.00 and obtained a release from further liability on behalf of Khalil and Rahahleh.[25] Further, Guardian paid legal fees in the amount of $8,104.12 for Khalil and Rahahleh's defense in the civil matter.[26] Despite several demands for payment, Khalil has failed and refused to pay the claims for damages caused by Rahahleh.

Guardian commenced this action for damages, breach of contract, indemnity and declaratory judgment on October 21, 2008.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

Summary Judgment will be granted if the "pleadings, depositions, answers to interrogatories, and admissions on File, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."[27] The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.[28] A fact is material only if its existence or non-existence will affect the outcome of a lawsuit under applicable law, and an issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[29] The role of the court is not to weigh the evidence for its truth or credibility, but merely to ascertain whether a triable issue of fact remains in dispute.[30] The non-moving party receives

---

[24] Pl.'s Exhs. 28 & 29; Pl.'s Statement of Addt'l. Undisputed Material Facts ¶ 30.

[25] *Id.* ¶ 32; Pl.'s Ex. 30.

[26] Pl.'s Statement of Addt'l. Undisputed Material Facts ¶ 33; Pl.'s Ex. 1.

[27] FED. R. CIV. P. 56(c); *Celotex Corp. v. Cairett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *see also Skopbank v. Allen-Williams Corp.*, 7 F. Supp. 2d 601, 605, 39 V.I. 220, 227 (D.V.I. 1998).

[28] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

[29] *Id.*

[30] *Suid v. Phoenix Fire & Marine Ins. Co., Ltd.*, 26 V.I. 223, 225 (D.V.I. 1991).

"the benefit of all reasonable doubts and inferences drawn from the underlying facts."[31]

## II. GUARDIAN'S MOTION FOR SUMMARY JUDGMENT ON ITS COMPLAINT

### a. GUARDIAN'S CLAIM FOR BREACH OF CONTRACT

Count II of Guardian's Complaint asserts a claim for breach of contract. Guardian asserts that it executed and delivered an automobile insurance policy to Khalil for the coverage of him and his Mercedes Benz. In the policy, Khalil expressly agreed that the policy would be inapplicable to any claim or loss arising from accidents which occur while any motor vehicle is being operated by any person under the age of twenty-six. Furthermore, the policy contemplated coverage for underage drivers, but Khalil did not identify any underage drivers. Khalil permitted Rahahleh to drive the insured car and Rahahleh was involved in a car accident. As a result, Guardian incurred costs for Rahahleh's liability for the damages arising from the accident.

Khalil, however, contends that the policy did not prohibit him from allowing another person to operate his vehicle, and such restriction cannot be construed from the language in the policy.

 To establish a breach of contract claim, a plaintiff is required to prove that there was (1) an agreement; (2) a duty created by that agreement; (3) a breach of that duty; and (4) damages.[32] "Ordinarily, when the terms of a contract are unambiguous, the Superior Court treats the issue of the meaning of those terms as a question of law, but if the terms are ambiguous, the issue of the meaning of the terms becomes a question of fact."[33]

 As a preliminary matter, having reviewed the automobile insurance policy, the Court deems that it is unambiguous. At issue in this claim is whether the policy imposed a duty on Khalil to not permit an underage

[31] *Aristide v. United Dominion Constructors, Inc.*, 30 V.I. 224, 226 (D.V.I. 1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

[32] *Arlington Funding Servs., Inc. v. Geigel*, 51 V.I. 118, 134-35 (2009); *see also Galt Capital, LLP v. Seykota*, Civ. Nos. 2002-63 and 2002-134, 2007 U.S. Dist. LEXIS 92955, at *10 (D.V.I. Dec. 10, 2007) (citing *Stallworth Timber Co. v. Triad Bldg. Supply*, 968 F. Supp. 279, 282, 37 V.I. 49 (D.V.I. App. Div. 1997)).

[33] *United Corp. v. Tutu Park Ltd.*, 55 V.I. 702, 707 (2011).

11

person to operate his vehicle. Specifically, the parties' arguments center around the provision of the policy titled "Exclusion of Drivers Under 26 Years of Age." That section specifically states that "[i]t is agreed that the insurance afforded by this policy shall not apply with respect to any claim or loss arising from accidents which occur while any automobile is being operated by any person who has not attained the age of Twenty-Six (26) years. It is agreed, however, that this exclusion shall not apply to the following persons, who are not expressly covered under the policy . . ."[34] The Court interprets this language as merely informing Khalil that persons under twenty-six years are not covered under the policy. The policy states that if an insured allows an underage person to operate the vehicle, such action is done at risk of no coverage for any resulting accident. Therefore, the Court agrees with Khalil's assertion that the policy did not forbid him from allowing an underage driver to operate the covered vehicle, but merely excluded underage drivers from coverage.

Thus, the Court determines that Guardian's argument that the policy imposed a duty on Khalil to not permit an underage person to operate the vehicle fails. Finding no duty under the facts submitted, an essential element of a claim for breach of contract, the Court concludes, as a matter of law, that Guardian is not entitled to summary judgment on its breach of contract claim. Therefore, the Court will deny in part Guardian's Motion for Summary Judgment on its Complaint with respect to the breach of contract claim, and will enter judgment dismissing the breach of contract claim.

### b. GUARDIAN'S CLAIM FOR INDEMNIFICATION

Guardian argues that it is entitled to indemnification from Khalil for the expenses it incurred in defending Khalil in the civil matter. Guardian further states that several provisions of the policy indicate that Guardian will pay all sums an insured legally must pay as damages because of bodily injury or property damage to which insurance applies, caused by an accident and resulting from the ownership or use of the covered vehicle.[35] In addition, the policy provides that Guardian may investigate

---

[34] Pl.'s Statement of Addt'l. Undisputed Material Facts, Ex. 4.
[35] Pl.'s Ex. 3.

and settle any claim or litigation as it deems appropriate.[36] In addition, the policy states that Guardian, in its discretion, may pay for damaged property.[37]

Khalil contends that Guardian is estopped from seeking indemnification because Guardian paid the claims without Khalil's consent.[38] In addition, Khalil states that Guardian failed to give consideration to Khalil's defenses, and failed to investigate Santos's claims.[39] Khalil also states that the action undertaken by Guardian in settling the claims of the third parties were imposed by law. Having fulfilled its obligations to Khalil in defending and settling the claims filed by Santos, Khalil argues that Guardian cannot claim entitlement to indemnity.

Indemnification — a form of restitution[40] — "is nothing short of simple fairness to recognize that '[a] person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity.' "[41] "Implied indemnity is essentially an equitable remedy that may 'arise without agreement, and by operation of law to prevent a result which is regarded as unjust or unsatisfactory.' "[42] "Another ground for implied indemnity occurs when two parties 'stand in a special legal relationship that carries with it the obligation . . . to indemnify.' "[43] "To prevent unjust enrichment, courts have assumed the duty of placing the obligation where in equity it belongs."[44]

---

[36] Pl.'s Ex. 3.

[37] Pl.'s Ex. 3, p. 4.

[38] Def.'s Ans. p. 3.

[39] *Id.*

[40] *See generally* RESTATEMENT (FIRST) OF RESTITUTION. "The rules of the common law, as expressed in the restatements of the law . . . , as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary." V.I. CODE ANN. tit. 1, § 4 (1995).

[41] *U.S. Fire Ins. Co. v. Federal Ins. Co.*, 858 F.2d 882, 887 (2d Cir. 1988) (citing RESTATEMENT (FIRST) OF RESTITUTION § 76).

[42] *Stephenson v. R.A. Jones & Co., Inc.*, 103 N.J. 194, 510 A.2d 1161, 1168 (1986) (internal citations omitted).

[43] *Id.*

[44] *U.S. Fire Ins. Co.*, 858 F.2d at 887.

■ As a preliminary matter, the parties agree that Title 20, Section 703 of the Virgin Islands Code imposed a legal duty on Guardian to pay for Santos's claims as a result of the vehicle accident involving Rahahleh, irrespective of the policy. Specifically, Section 703 states that an owner's policy of automobile liability insurance "shall insure the person named therein and any other person . . . using any such vehicle . . . with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the . . . use of such vehicle . . . in the Virgin Islands."[45] Moreover, the Court is bound to give effect to the literal meaning, without consulting other indicia of intent or meaning, when the statutory text itself is "plain" or "clear and unambiguous."[46] Section 703's text is clear — an owner's automobile insurance policy shall insure the owner of the policy and any other person, authorized by the owner, using the owner's vehicle against liability for damages. In this matter, the insurance policy insured Khalil and his Mercedes Benz. Khalil states that he had given Rahahleh permission to use his Mercedes Benz. Rahahleh also acknowledges that Khalil gave him permission to use the Mercedes Benz. Therefore, the Court finds, as a matter of law, that Guardian had the duty to insure Rahahleh.

■ The Court notes that the parties have a special relationship as insurer and insured. Moreover, the Court concludes that based on the exhibits presented, Guardian fully investigated Santos's claim for property damage. Guardian received Santos's written statement regarding the accident, receipts for services rendered for Santos's bodily injury, and a repair estimate. Thereafter, Guardian's claims adjuster took photographs of Santos's damaged vehicle and contacted Khalil for his version of the events surrounding the accident. After assessing Santos's claim. Guardian compensated Santos for her harm. Regarding the civil matter, Guardian retained counsel for Khalil's defense, and twice sent correspondence apprising Khalil of the pending litigation and representation. Furthermore, the Court determines that Khalil consented to the legal representation in the civil case, funded by Guardian, through his execution of the policy. Khalil enjoyed the benefit of Guardian's

---

[45] V.I. CODE ANN. tit. 20, § 703(b) (1995 & Supp. 2011).

[46] *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 102 S. Ct. 1534, 71 L. Ed. 2d 748 (1982); *United States v. Pa. Envtl. Hr'g Bd.*, 584 F.2d 1273 (3d Cir. 1978); *Phipps v. Virgin Islands*, 54 V.I. 543, 576 (2011).

14

involvement, since Guardian had to incur these expenses because of Section 703 with respect to Rahahleh, and because of several provisions in the policy with respect to both Rahahleh and Khalil. The Court opines that it is fair and equitable, based on the facts, that Khalil compensate Guardian for the expenditures related to the claims and defense thereof. Therefore, the Court finds no genuine issue of material fact and that. Guardian is entitled to summary judgment on its claim for indemnification as a matter of law. Thus, the Court will grant Guardian's Motion for Summary Judgment on its Complaint with respect to its claims for indemnification.

### C. GUARDIAN'S REQUEST FOR DECLARATORY JUDGMENT

Guardian seeks a declaratory judgment against Khalil confirming that the policy did not cover the accident with Rahahleh, because of the underage driver exclusion which Khalil consented to in writing, and that Guardian is entitled to recover from Khalil through its right to indemnity.

■ ■ "The [ ] Court . . . is empowered to grant declaratory relief provided that an 'actual controversy' exists between the parties."[47] As outlined above, the policy did not apply with respect to Santos's claims arising from the car accident which occurred while Rahahleh, underage at the time, operated Khalil's vehicle. Furthermore, also addressed above, Guardian is entitled to indemnity. Thus, the Court finds, as a matter of law, that Guardian is entitled to summary judgment with respect to its claim for declaratory judgment. For that reason, the Court will grant Guardian's Motion for Summary Judgment as to the claim for declaratory judgment.

Having considered the parties' arguments, exhibits, and the law, and finding that there are no genuine issues of disputed fact, the Court finds, as a matter of law, that Guardian is entitled to summary judgment on its claim for indemnification and declaratory judgment. Guardian, however, is not entitled to summary judgment on its claim for breach of contract. The Court will, therefore, deny in part Guardian's Motion for Summary Judgment on its Complaint as to the claim for breach of contract, and will dismiss this claim, but will grant it in part with respect to the claims for indemnification and declaratory judgment.

---

[47] *Norman's on the Waterfront, Inc. v. Wheatley*, 317 F. Supp. 247, 249, 8 V.I. 69 (D.V.I. 1970), *Virgin Islands Terr. Bd. of Realtors v. Wheatley*, 6 V.I. 185, 190-91 (D.V.I. 1965).

### III. GUARDIAN'S MOTION FOR SUMMARY JUDGMENT ON KHALIL'S COUNTERCLAIMS

In this case, Khalil has asserted counterclaims for breach of contract, breach of fiduciary duty, breach of duty of good faith and fair dealing, and civil conspiracy. Finding no genuine issue of material fact concerning the counterclaims, and that Guardian is entitled to judgment as a matter of law, the Court will grant Guardian's Motion for Summary Judgment on the Counterclaims.

### a. KHALIL'S COUNTERCLAIM FOR BREACH OF CONTRACT

For his breach of contract claim, Khalil states that Guardian failed to investigate and protect his rights. Khalil also states that Guardian did not obtain his consent prior to settling the civil matter. Khalil further states that he thought the policy would not cover an underage driver, and that Guardian settled the matter with Santos for an amount that exceeds the policy and without revealing that Santos also had a policy with Guardian.[48]

In support of its Motion for Summary Judgment on Khalil's counterclaims, Guardian submits that the policy provides that it will pay the maximum amount of $10,000 for bodily injury for each person, with a limit of $20,000 for each accident. Although Khalil states that Guardian's payment to Santos exceeded the policy, Guardian states that it paid Santos $10,000 for her personal injury claim[49] and paid Santos's minor son $7,500 for his personal injury claim.[50] Therefore, in total, Guardian paid $17,500 for the bodily injury claims for the automobile accident, which is within the policy limits of $20,000 for each accident. Thus, Guardian states that Khalil's contention is incorrect.

Guardian further contends that it investigated Santos's claims and protected Khalil's rights by hiring independent legal counsel to defend him in the civil litigation. In fact, the independent counsel settled the lawsuit and obtained releases which benefited Khalil and his son, Rahahleh. Guardian also states that it kept Khalil informed with respect to Santos's claim and the litigation.

---

[48] Def.'s Answer & Counterclaims ¶¶ 23-27.
[49] Pl.'s Statement of Addt'l. Undisputed Material Facts ¶ 30; Pl.'s Exhs. 28 & 29.
[50] Pl.'s Statement of Addt'l. Undisputed Material Facts ¶ 31; Pl.'s Exhs. 30.

For convenience, the Court will again set forth the elements of a breach of contract claim, which are: (1) an agreement; (2) a duty created by that agreement; (3) a breach of that duty; and (4) damages.[51]

As a preliminary matter, the Court finds that Guardian did not pay Santos and her minor son under the policy. As stated above, the policy did not cover damages arising from accidents in which an underage driver operated the covered vehicle. Irrespective of the policy, Guardian had a duty under law to cover Rahahleh's accident, pursuant to Title 20, Section 703 of the Virgin Islands Code which requires a policy to insure any other person authorized by the owner of the policy against liability for damages. Therefore, the Court will not address whether or not Guardian paid over the policy limits, since the policy did not apply.

The parties agree that they had an agreement which imposed a duty on Guardian to, *inter alia*, investigate the claims. Khalil states that he understood the policy to exclude coverage for an underage driver and the Court concludes the same, as noted above in Section II a. of this Memorandum Opinion. Nonetheless, Guardian had to insure Rahahleh in his accident with Santos. Although Khalil states that Guardian did not fulfill its duty to investigate and protect his rights, the Court has already addressed this issue and has concluded that Guardian fully investigated the claims. Specifically, Guardian obtained written statements from Santos, Khalil, and Rahahleh regarding the accident, obtained receipts for the damages Santos suffered, and took photographs of Santos's vehicle. Later, Guardian hired independent legal counsel to defend Khalil and obtained releases on Khalil and Rahahleh's behalf. Throughout this process, Guardian apprised Khalil of the claims and litigation. Thus, in Section II b. of this Memorandum Opinion, the Court determined that Guardian satisfied its duty to investigate and defend Khalil. The Court also opines that Guardian protected Khalil's rights when it fully investigated the claims and hired independent legal counsel to defend him. Furthermore, the Court has also stated above that Khalil consented to Guardian settling the civil case through his execution of the policy.

---

[51] *Arlington Funding Servs., Inc. v. Geigel*, 51 V.I. 118, 134-35 (2009); *see also Galt Capital, LLP v. Seykota*, Civ. Nos. 2002-63 and 2002-134, 2007 U.S. Dist. LEXIS 92955, at *10 (D.V.I. Dec. 14, 2007) (citing *Stallworth Timber Co. v. Triad Bldg. Supply*, 968 F. Supp. 279, 282, 37 V.I. 49 (D.V.I. App. Div. 1997)).

█ There are no genuine issues of material fact concerning the terms of the agreement between Guardian and Khalil. Based on the facts presented, the Court deems that the parties had an agreement, but that the agreement did not cover the payments made as a result of the accident with Santos which were made by virtue of Virgin Islands law. There is no genuine issue of material fact as to whether Guardian breached the agreement it had with Khalil, and Guardian is entitled to judgment as a matter of law dismissing the counterclaim for breach of contract. For that reason, the Court will grant Guardian's Motion for Summary Judgment on the Counterclaim with respect to the breach of contract counterclaim.

### b. KHALIL'S COUNTERCLAIM FOR BREACH OF FIDUCIARY DUTY

In Count II of the Counterclaim, Khalil asserts that Guardian breached its fiduciary duty when it failed to disclose that Santos also had a policy with Guardian. Because Guardian also had a policy with Santos, Khalil argues that it had a conflict of interest. In addition, Khalil states that Guardian failed to disclose to him that the claim exceeded the policy limit and failed to inform him that he could seek independent counsel.

█ "One standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation."[52] "A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the. relation."[53] "As such, to establish a claim for breach of fiduciary duty: (1) there must be a fiduciary relationship, (2) the fiduciary must have breached its duty imposed by such relationship, (3) the plaintiff must have been harmed, and (4) the fiduciary's breach must be a proximate cause of the plaintiffs harm."[54] Since the fiduciary duty in this case arises out of the policy, this counterclaim sounds in tort.[55] Thus, the claim of breach of fiduciary duty has a two-year statute of limitations.[56]

---

[52] RESTATEMENT (SECOND) OF TORTS § 874 (1979).

[53] *Id.* at cmt. a.

[54] *Watts v. Blake-Coleman*, Civil No. 2011-61, 2012 U.S. Dist. LEXIS 43454, *12-13 (D.V.I. March 29, 2012).

[55] *See Whitaker v. Merrill Lynch*, 36 V.I. 75, 79 (Terr. Ct. 1997) ("If claims are based upon a breach of specific provisions in a contract, the action sounds in contract; if, however, the

In the Motion for Summary Judgment on Khalil's counterclaim, Guardian acknowledges that it had a fiduciary relationship with Khalil and states that it notified Khalil of Santos's claim as early as November 21, 2002. In addition, Guardian states that it did not conceal the fact that it also insured Santos's vehicle and in fact the police report of the accident indicates that Santos's automobile insurance company is Guardian.[57] Guardian also asserts that it investigated the claim against Khalil, defended Khalil and paid the claims.

Guardian further contends that Khalil's claim is barred by the two-year statute of limitations[58],[59] and Khalil's counterclaim fails to state the date when the breach occurred. Guardian argues that the alleged conflict of interest would have occurred on November 21, 2002, when Guardian informed Khalil of Santos's claim against him. Khalil did not assert his breach of fiduciary duty counterclaim until he filed his Answer and Counterclaim on December 15, 2008, beyond the two-year expiration date of November 21, 2004.

Because Khalil has failed to indicate the accrual date of his breach of fiduciary duty counterclaim, the Court must determine the accrual date and whether the statute of limitations bars this claim. "As a general proposition, 'a statute of limitation begins to run upon the occurrence of the essential facts which constitute the cause of action.' "[60] "[T]he . . . crucial question in determining the accrual date for statute of limitations purposes is whether the injured party had sufficient notice of the invasion of his legal rights to require that he investigate and make a timely claim or risk its loss."[61]

Although Guardian states that the accrual date is November 21, 2002, the Court finds that the date that Khalil reasonably could have

---

claims are based on a breach of a legal duty imposed by law that arises out of the performance of the contract, the action sounds in tort.")

[56] 5 V.I.C. § 31(5)(A); *see also Whitaker v. Merrill Lynch*, 36 V.I. 75, 81 (Terr. Ct. 1997);

[57] Pl.'s Ex. 12.

[58] V.I. CODE ANN. tit. 5, § 31(5)(A) (1997).

[59] *See Whitaker*, 36 V.I. at 81; *see also Tradewinds, Inc. v. Citibank, N.A.*, 20 V.I. 152 (D.V.I. 1983).

[60] *Whitaker*, 36 V.I. at 81 (citing *Simmons v. Ocean*, 544 F. Supp. 841, 843, 19 V.I. 232 (D.V.I.1982)); *see also Wilcox v. Executors of Plummer*, 29 U.S. 172, 180, 7 L. Ed. 821 (1830)).

[61] *Zeleznik v. United States*, 770 F.2d 20, 23 (3d Cir. 1985).

discovered the alleged breach of fiduciary duty[62] is between the date Guardian notified Khalil of Santos's claim, November 21, 2002 and the date Guardian settled Santos and her son's claims in the civil case, January 26, 2006. Accordingly, the Court deems that the last date that Khalil could have reasonably discovered any harm is January 26, 2006. Thus, Khalil should have asserted his claim before January 26, 2008. Instead, Khalil asserted his claim on December 15, 2008, after the period had run. Therefore, Khalil's claim for breach of fiduciary duty is time-barred. For that reason, the Court will grant the Motion for Summary Judgment on the Counterclaim as to the claim for breach of fiduciary duty.

### C. KHALIL'S COUNTERCLAIM FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

Guardian states that Khalil's counterclaim for breach of the duty of good faith and fair dealing does not assert specific allegations of bad faith by Guardian. Guardian also argues that it did not act in bad faith when it adjusted Santos's claim for property damage and when it hired independent legal counsel to defend Khalil and Rahahleh in the civil action. In addition, Guardian contends that it is not bad faith to seek reimbursement from Khalil for the expenses incurred for paying the claims, legal defense, and settlement. Furthermore, Guardian states that Khalil's claim for breach of the duty of good faith and fair dealing is time-barred pursuant to Title 5, Section 31(5)(A) of the Virgin Islands Code.

In Opposition, Khalil states that Guardian was representing his and Santos's interests since she also had a policy with Guardian, which is a conflict of interest. In settling the claim, Khalil argues that Guardian also represented its own interest and did not act in Khalil's best interest. Khalil also contends that Guardian's obligation to satisfy Santos's claims would only arise upon Khalil's liability, and his liability had not been established. Essentially, Khalil posits that Guardian's failure to disclose information that is material to the rights that he needs to protect constitutes a breach of the duty of good faith and fair dealing.

---

[62] In the contest of the accrual date of a claim of breach of fiduciary duty, "the statute of limitations begins to run on the date . . . the [plaintiff] discovers or reasonably could have discovered the harm he has suffered it is not immediately apparent." *Whitaker*, 36 V.I. at 82 (citing *Manning v. Maloney*, 787 F. Supp. 433 (M.D.Pa. 1992)).

20

■ Under the duty of good faith and fair dealing, "every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."[63] Good faith means "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness."[64]

■ ■ Khalil's claim for breach of the duty of good faith and fair dealing arises in the insurance context and, therefore, the recovery is in tort.[65] The parties have a special relationship as insurer and insured and Khalil may be entitled to "tort recovery for breach of the implied covenant based upon the special relationship created by the unequal bargaining power that an insurer has over an insured."[66] Moreover, "when a special relationship of trust and reliance is demonstrated, a breach of the implied covenant is actionable as a tort."[67] As such, the Court agrees with Guardian that a two-year statute of limitations applies.

The Court has already determined that the last possible date that Khalil could have discovered the facts to support his claim for breach of the duty of good faith and fair dealing is January 26, 2006. Therefore, the statute of limitations expired on January 26, 2008 and Khalil asserted his counterclaim on December 15, 2008. Thus, Khalil's counterclaim is time-barred and the Court will grant Guardian's Motion for Summary

---

[63] RESTATEMENT (SECOND) OF CONTRACTS § 205.

[64] *Id.* at 100, cmt. a.

[65] *See In re Tutu Water Wells Contamination Litig.*, 78 F. Supp. 2d 436, 452-53, 42 V.I. 299 (D.V.I.1999) (stating that "a review of the case law reveals that [ ] the majority of jurisdictions have allowed an affirmative tort recovery by an insured pursuant to an insurer's bad faith violation of an insurance contract"); *see also Robeson Indus. Corp. v. Hartford Acc. & Indem. Co.*, 178 F.3d 160 (3d Cir. 1999) ("noting that insurance policies, like other contracts, contain an implied duty of good faith and fair dealing. In order to sustain an action for tort liability against an insurer, as opposed to an action for breach of contract, the insured's complaint must assert a basis for tort liability that goes beyond the breach of the insurer's contractual duties.") (internal citations omitted); *deVries v. St. Paul Fire and Marine Ins. Co.*, 716 F.2d 939, 943-44 (1st Cir. 1983) (determining, that the claim of breach of the duty of good faith and fair dealing in an insurance case sounds in tort).

[66] *Mendez v. Coastal Sys. Dev., Inc.*, Civil No. 2005-0165, 2008 WL 2149373, at *5 n.3 (D.V.I. May 20, 2008).

[67] *Id.*

21

Judgment on the Counterclaims with respect to the claim for breach of the duty of good faith and fair dealing.

### d. KHALIL'S COUNTERCLAIM FOR CIVIL CONSPIRACY

In Count III of the Counterclaim, Khalil alleges, in support of his claim for civil conspiracy, that Guardian and its employees are involved in a criminal enterprise to fraudulently deceive and extort funds from him, to support his counterclaim for civil conspiracy.

Guardian argues that the material facts, the pleadings, exhibits and affidavits do not support this cause of action. In addition, Guardian states that in an interrogatory, Khalil identifies Guardian's board members, Karen Rabsatt, Vigilio Fournier, Raymond Fournier, and Karen John as conspirators.[68] Karen Rabsatt is the Senior Claims Manager who had oversight over Santos's claims.[69] Vigilio Fournier works as an adjuster in St. Croix. Raymond Fournier is president of Guardian.[70] Karen John is Guardian's Vice President of Claims.[71] Also, Guardian asserts that since it is a corporation it cannot conspire with itself. In addition, Guardian states that it properly investigated and adjusted Santos's claims.

Khalil, in his Opposition, does not expressly address his counterclaim for civil conspiracy.

 "[A] civil conspiracy consists of an agreement or combination to perform a wrongful act that results in damage to the plaintiff. A conspiracy may also consist of an agreement to do a lawful act by unlawful means."[72] The Court agrees with Guardian that the intracorporate doctrine precludes Khalil's civil conspiracy counterclaim. Under the intracorporate conspiracy doctrine, "an entity cannot conspire with one who acts as its agent."[73] However, "a conspiracy may exist between a corporation and an officer 'if the officer is acting in a personal,

---

[68] Pl.'s Ex. 31.

[69] Pl.'s Ex. 1.

[70] Pl.'s Ex. 32.

[71] *Id.*

[72] *Gov't Guar. Fund Repub. Fin. v. Hyatt Corp.*, 955 F. Supp. 441, 456, 35 V.I. 356 (D.V.I. 1997).

[73] *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) (citing *Heffernan v. Hunter*, 189 F.3d 405, 413 (3d Cir. 1999)).

as opposed to official, capacity.' "[74] Moreover, such actions must be motivated by a *solely* personal bias and not partially to benefit the corporation.[75] The Court notes that the record is devoid of any facts that show that the officers identified by Khalil acted outside of their official capacity. For that reason, Guardian is entitled to summary judgment with respect to Khalil's counterclaim for civil conspiracy.

Guardian has shown that it did not breach any duty it owed to Khalil in the insurance policy. Furthermore, the statute of limitations bars the actions for breach of fiduciary duty and breach of the duty of good faith and fair dealing. In addition, the intracorporate doctrine defeats the counterclaim for civil conspiracy. There are no genuine issues of material fact concerning the counterclaims, and Guardian is entitled to judgment dismissing the counterclaims as a matter of law. Thus, the Court will grant Guardian's Motion for Summary Judgment on the Counterclaims, with respect to all of the asserted counterclaims.

## IV. KHALIL'S MOTION FOR SUMMARY JUDGMENT

 Turning to Khalil's Motion for Summary Judgment on Guardian's Complaint, the Court notes that the Motion fails to comply with Local Rule 56.1. Specifically, Rule 56.1 states that "[e]ach summary judgment motion shall be accompanied by a brief, affidavits and/or other supporting documents, including a separate statement of material facts."[76] Khalil's Motion for Summary Judgment does not include a separate statement of material facts as required. Thus, Khalil's Motion is improperly before the Court. In any event, the Court has reviewed Guardian's Motion for Summary Judgment on its Complaint, and has already decided to grant it

---

[74] *Heffernan*, 189 F.3d at 412 (quoting *Robison v. Canterbury Vill., Inc.*, 848 F.2d 424, 431 (3d Cir. 1988)); *see also Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769-70 n.15, 104 S. Ct. 2731, 81 L. Ed. 2d 628 (1984) (explaining that many courts have created an exception to the intracorporate doctrine "for corporate officers acting on their own behalf").

[75] *See Hartman v. Bd. Tr. Cmty. Coll. Dist. No. 508, Cook County, Ill*, 4 F.3d 465, 470 (7th Cir. 1993) (the court, in the context of the intracorporate doctrine, questioned whether it was appropriate to hold corporate agents liable then their actions within the scope of employment were prompted, only partially, by personal racial animus. The court concluded that a conspiracy could only be established if the employees' actions were solely the result of personal bias).

[76] LRCi 56.1(a)(1).

23

in part and deny it in part. Thus, the Court will deny Khalil's Motion for Summary Judgment on Guardian's Complaint as moot.

## CONCLUSION

Finding that Khalil did not breach the contract, as a matter of law, the Court will deny in part Guardian's Motion for Summary Judgment on its Complaint, and will grant judgment dismissing the claim for breach of contract. The Court, however, will grant in part Guardian's Motion for Summary Judgment with respect to the claim for indemnification and declaratory judgment.

Further, the Court will grant Guardian's Motion for Summary Judgment on the Counterclaims, with respect to all of the asserted counterclaims, since there are no genuine issues of material fact and Guardian is entitled to judgment dismissing the counterclaims as a matter of law. Guardian has shown that it did not breach any duty it owed to Khalil in the insurance policy. In addition, the statute of limitations bars the actions for breach of fiduciary duty and breach of the duty of good faith and fair dealing, and the intracorporate doctrine defeats the counterclaim for civil conspiracy. Lastly, the Court will deny Khalil's Motion for Summary Judgment as moot.