NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2716
_____

BAYSIDE CONSTRUCTION LLC

v.

JEFFREY M. SMITH; SARAH A. SMITH,
Appellants
_____

On Appeal from the District Court of the
Virgin Islands of United States
(D.C. No. 3-20-cv-0117)
District Judge:  Honorable Robert A. Molloy
_____

Argued
May 11, 2022

Before:  JORDAN, MATEY and ROTH, *Circuit Judges*

(Filed: July 8, 2022)
_____

Colin Hagan   [ARGUED]
David J. Shlansky
Shlansky Law Group
1 Winnisimmet Street
Chelsea, MA  02150

Christopher A. Kroblin
Kellerhals Ferguson Kroblin
9053 Estate Thomas
Royal Palms Professional Building, Suite 101
St. Thomas, VI  00802
        *Counsel for Appellants*

David J. Cattie   [ARGUED]
The Cattie Law Firm
1710 Kongens Gade
St. Thomas, VI  00802
        *Counsel for Appellee*

_____

OPINION[*]

_____

JORDAN, *Circuit Judge*.

Jeffrey and Sarah Smith appeal an order of the District Court confirming an arbitration award that directed them to pay damages to a contractor they hired to perform repair work on their house on St. Thomas in the U.S. Virgin Islands.  We will affirm.

## I.     BACKGROUND

The Smiths own a house on St. Thomas that was damaged by Hurricanes Irma and Maria in 2017.  They submitted an insurance claim for the damage with help from an insurance agent named Brian Ostrander, and the claim was approved for $738,516.83.  Around that same time, Ostrander formed Bayside Construction LLC and, through Bayside, offered to perform the repair work for the full claim amount.  The Smiths agreed.  According to their contract (the "Agreement"), Bayside would "provide labor, materials, and equipment to perform the work" throughout the house and on much of its exterior, including the pool.  (J.A. at 29.)  The Smiths, in exchange, agreed to pay $738,516.83, divided into progress payments, or "draws."

_____

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Work began in June 2018, when Bayside's first draw request was approved,[1] and, per the Agreement, substantial completion of the work was to be achieved by mid-December. Bayside collected its second draw in October as work progressed, but construction stalled when Bayside had to clean up and vacate the home for a few days at the Smiths' request while the Smiths gave their home to renters. The Smiths again asked work to stop when they decided to stay at the house for Thanksgiving. While they were there for the holiday, they walked through the project with Ostrander and voiced some dissatisfaction with the work, particularly the shower tiling and drainage.

Soon after, the Smiths once more asked Ostrander to cease work and clean up the property for more renters in early December, and Sarah Smith asked Bayside to do some work in preparation for the renters' arrival. Bayside did the work as requested and vacated on December 3. Ostrander and the Smiths exchanged text messages later in December, in which the Smiths told him not to perform any work after the December renters left, because the Smiths would be back to the property for the Christmas holiday. Ostrander expressed his willingness to correct and finish work to the Smiths' satisfaction, but the Smiths responded only by advising that more renters were coming in early 2019 and that no work was to be done until April.

---

[1] Draw requests were approved and paid by the property's mortgage holder, which held the insurance proceeds.

In January 2019, Bayside requested a third draw of $242,299.55 and a fourth draw of $31,414.73, neither of which were paid.[2] On February 5, Bayside filed a contractor's lien on the Smiths' property for $382,097.53 – the balance of the contract price after the first two draws – and it notified the Smiths of the lien via email. The Smiths responded on March 5 by declaring Bayside in default for defects in its work, but they did not, as required by the Agreement, give Bayside an opportunity to cure the alleged defaults.

Bayside filed an arbitration demand,[3] claiming, among other things, $273,714.28 for termination of the Agreement.[4] The Smiths counterclaimed for what they said was overpayment for the work performed. After a three-day hearing, the arbitrator concluded that the Smiths had breached the Agreement, and he awarded $242,253.46 in damages to Bayside. The award reflected a deduction for "shoddy" work on two showers and the pool plaster finish, as the arbitrator believed he was authorized by an arbitration rule to "grant any remedy or relief that [he] deem[ed] just and equitable and within the scope of the agreement of the parties[.]" (J.A. at 24-25 (quoting Am. Arb. Ass'n Constr. R. 48).)

---

[2] The third draw request was revised down from $335,810.22 after the mortgage holder noted some defects in the work previously performed.

[3] Bayside first sued in the District Court of the Virgin Islands. After the Smiths moved to compel arbitration pursuant to the Agreement's arbitration provision, the parties stipulated to dismissal of the lawsuit in lieu of arbitration.

[4] That amount reflected the sum of the third and fourth draw requests. According to the arbitrator's award, Bayside originally demanded "$279,219.31 due on the [Agreement]" (J.A. at 20), which might have included claims for other breaches that the arbitrator denied.

Bayside petitioned the District Court to confirm the award, while the Smiths moved to vacate it. According to the Smiths, the arbitrator erroneously applied the arbitration rule and disregarded Virgin Islands law, which the parties had agreed governed their Agreement. The Court granted Bayside's petition and denied the Smiths' motion. It held that the arbitrator made a good-faith attempt to interpret the Agreement, including the provision for arbitration of claims to be resolved according to "the rules and procedures of the arbitrator." (J.A. at 4 (quoting the Agreement).) The Smiths timely appealed.

## II.    DISCUSSION[5]

The Smiths claim that the arbitrator both manifestly disregarded the law[6] and exceeded his powers by issuing an award to Bayside for $242,253.46. Their theory is, as it was before the District Court, that the arbitrator disregarded Virgin Islands law in making his award. Had the arbitrator applied the correct law, they claim, their payment

---

[5] The District Court had jurisdiction under 28 U.S.C. § 1332, based on "the application actually submitted to it[.]" *Badgerow v. Walters*, 142 S. Ct. 1310, 1314 (2022). The Court did not need to "look through" to the "underlying substantive controversy" in order to establish jurisdiction. *Id.* We have jurisdiction pursuant to 28 U.S.C. § 1291. "On appeal from a district court's ruling on a motion to confirm or vacate an arbitration award, we review its legal conclusions de novo and its factual findings for clear error." *CPR Mgmt., S.A. v. Devon Park Bioventures, L.P.*, 19 F.4th 236, 244 n.8 (3d Cir. 2021) (citation and internal quotation marks omitted).

[6] We assume without deciding that an arbitrator's manifest disregard of the law remains a valid basis for vacating arbitration awards. *See Goldman v. Citigroup Glob. Markets Inc.*, 834 F.3d 242, 256 n.13 (3d Cir. 2016) (observing circuit split since the Supreme Court's decision in *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008), which held that "§§ 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification").

obligations would have been excused due to the fact that Bayside did some repair work that the arbitrator himself considered shoddy and in need of redoing. They are mistaken.

While the award did not cite Virgin Islands law, it is perfectly consistent with authority in the territory. The arbitrator found that the Smiths breached the Agreement by preventing Bayside from doing any repair work after December 3, 2018, and by declaring Bayside in default on March 5, 2019, without allowing it to cure the purported default. *See Gov't Guarantee Fund of Republic of Fin. v. Hyatt Corp.*, 960 F. Supp. 931, 941 n.10 (D.V.I. 1997) (citing cases in which one party breached a contract by terminating the relationship without giving the other party an opportunity to cure alleged defaults). To the extent that Bayside partially breached the Agreement by performing "shoddy" work on two showers and the pool, Virgin Islands law would not, as the Smiths contend, excuse the Smiths' duty to pay amounts owed for repair work done, given that the Agreement contemplated work on essentially the entirety of the house. *See Felton v. Elkins*, 46 V.I. 422, 425 (D.V.I. 2004) ("Before a breach will justify non-performance of the non-breaching party's remaining duties, … the breach must be material and remain uncured.").[7]

As to damages, the arbitrator correctly observed that the Agreement provided for Bayside to be made whole for its completed work even if some of the work was

---

[7] The same is true even if the Smiths' duty to pay is characterized, as the Smiths do in passing, as a "dependent covenant[.]" (Opening Br. at 12.) *See Gourmet Gallery Crown Bay, Inc. v. Crown Bay Marina, L.P.*, No. ST-2014-CV-513, 2015 WL 9874077, at *6 (V.I. Super. Ct. Nov. 10, 2015) (requiring "that the landlord's breach of the covenant [be] material" before it can excuse performance of the dependent covenant).

substandard. *See Charles v. Pringle*, No. CV 1058/1985, 1986 WL 1361530, at *2 (V.I. Terr. Ct. Oct. 27, 1986) ("The plaintiff, because he substantially performed, should receive the benefit of his bargain."). And the arbitrator appropriately deducted the costs that the Smiths would incur to redo the two showers and the pool plaster finish. That he cited an arbitration rule rather than case law in doing so is immaterial, since the outcome is no different under Virgin Islands law.[8] *See id.* at *3 ("[T]he defendant is entitled to a set-off for defects in the construction that were caused by the contractor.").

Because the award was consistent with authority in the Virgin Islands, the arbitrator could hardly be said to have manifestly disregarded the law or the parties' Agreement. *Monongahela Valley Hosp. Inc. v. United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union*, 946 F.3d 195, 199 (3d Cir. 2019). For the same reason, the arbitrator did not exceed his powers. He issued an award that was rationally derived from the parties' Agreement and from their submissions. *CPR Mgmt., S.A. v. Devon Park Bioventures, L.P.*, 19 F.4th 236, 246 (3d Cir. 2021).

III.  CONCLUSION

Based on the foregoing, we will affirm the District Court's order.

---

[8] The Smiths argue that the District Court erred in holding that the arbitrator made a good-faith attempt to interpret the Agreement, which contained not only a choice-of-law provision in favor of Virgin Islands law but also a provision for arbitration of claims to be resolved according to the arbitrator's rules and procedures. They cite to cases addressing contracts that contain both such provisions and argue that the choice-of-law provision applied to the substantive issue of the appropriate remedy. Those cases are inapposite because what the arbitrator did here is entirely consistent with Virgin Islands law.